[L. A. Nos. 416 and 417.  Department Two.—July 16, 1898.]

## C. V. STANSBURY, Respondent, v. J. O. WHITE et al., Appellants.

STREET ASSESSMENT—INVALID CONTRACT—DELEGATION OF POWER TO SUPERINTENDENT OF STREETS.—A contract for a street improvement, under the street improvement act of 1885, which delegates to the superintendent of streets power to determine whether more or less work shall be done by the contractor, and what materials shall be used in certain events, and whether or not the right kind of material has been used, is invalid; and no assessment can be enforced thereunder.

APPEALS from judgments of the Superior Court of Los Angeles County.  M. T. Allen, Judge.

The facts are stated in the opinion.

C. W. Chase, for Appellants.

The assessment is void, because of an unauthorized delegation of power to the superintendent of streets under the contract.  (*Bolton v. Gilleran*, 105 Cal. 244; 45 Am. St. Rep. 33; *San Jose Imp. Co. v. Auzerais*, 106 Cal. 498; *Perine Contracting etc. Co. v. Pasadena*, 116 Cal. 6; *Richardson v. Heydenfeldt*, 46 Cal. 68; *People v. Clark*, 47 Cal. 456; *Randolph v. Gawley*, 47 Cal. 458; *Himmelmann v. McCreery*, 51 Cal. 562; *Stockton v. Creanor*, 45 Cal. 643; *Thompson v. Schermerhorn*, 6 N. Y. 92; 55 Am. Dec. 385; *Phelps v. Mayor*, 112 N. Y. 221; Dillon on Municipal Corporations, secs. 96, 779.)

Charles H. McFarland, for Respondent.

No power was vested in the superintendent of streets by the contract other than that already vested in him by the statute. (Vrooman Act, secs. 6, 8; Stats. 1885, p. 147.)

BELCHER, C.—Two actions were commenced by C. V. Stansbury and H. I. Moore, copartners doing business under the firm name of Stansbury & Moore, against the defendants, J. O. White, E. B. White, his wife, and Delia W. Chase, to foreclose the liens of a street assessment for improvements made on Gallardo street in the city of Los Angeles.  The assessment

involved in one of the cases was on the north seventeen feet of lot 21 in the Villa Tract in said city. for forty dollars and forty-nine cents, and that involved in the other case was on the south sixteen feet of lot 22 in the same tract for thirty-eight dollars and twelve cents.

The defendants filed a general demurrer to each complaint, which was overruled, and then answered. The cases were tried together, and judgments were entered awarding the plaintiffs the relief demanded, with costs and attorneys' fees. From these judgments the defendants have appealed, the appeals being respectively designated as Nos. 416 and 417.

The cases, as shown by the records and briefs filed, are in all respects identically the same, except as to the lots assessed and the amounts of the assessments, and they may therefore be considered together.

After the judgments were rendered and before the appeals were taken Moore died, and, by an order of court, Stansbury, the surviving member of the firm, was substituted as sole plaintiff.

It is alleged in the complaints that on August 28, 1895, the city council of the city of Los Angeles passed a resolution of intention to have Gallardo street, between certain designated terminals, graded, graveled, and guttered in accordance with specifications No. 5 on file in the offices of the city engineer and city clerk of said city, and to have constructed along each side of the street, between the said terminals, a cement curb and a cement sidewalk, five feet wide, in accordance with the amended specifications No. 12 on file in the offices of said city engineer and clerk.

At the trial it was stipulated that the work was done under said specifications, which were fully set out. Specifications No. 5 contained, among others, the following provisions:

"The contractor shall not use any material in filling the subgrade that is of a spongy nature, and should the street, or any portion thereof, be found to contain material unsuited for foundation purposes, the contractor shall remove such material at his own expense, and replace it with good earth or gravel. . . . . An allowance for settling, to be determined by the street superintendent, shall be made when finishing fill. . . . . Un-

less otherwise directed by the street superintendent, the crown of the street shall be made to conform with the cross-section on file with the city clerk. . . . . The crown and sidewalks shall be made to conform to the above-mentioned cross-section. Should the street superintendent deem it necessary to change the above-described form of cross-section of street, at any place thereof, the contractor shall comply to such change without receiving extra pay therefor. . . . . The contractor shall provide for drainage under all banks that it may be necessary for him to make across ravines or drainage channels, and put in such culverts as the street superintendent may direct, and at his own cost. . . . . In all fills the earth shall be made to assume its natural slope, or shall be made of such slope as may be indicated by stakes set by the city engineer. . . . . Doubts as to the true meaning and intent of these specifications will be solved by the street superintendent."

And specifications No. 12 contain, among others, the following provisions:

"Sidewalks shall be three and one-half inches thick, built on a foundation constructed as follows: All soft or spongy material is to be removed and replaced with sand gravel of a quality and quantity acceptable to the street superintendent, and then tamped, etc. . . . . The material to be supplied in case of fill must be satisfactory to the street superintendent. . . . . The finishing coat shall be mixed with lamp black or any durable coloring matter that shall give a dark slate color, the same to be of a shade that will be satisfactory to the street superintendent."

The street improvement act of 1885 (Stats. 1885, p. 147) provides in section 6: "The work provided for in section 2 of this act must, in all cases, be done under the direction and to the satisfaction of the superintendent of streets, and the materials used shall comply with the specifications and be to the satisfaction of said superintendent of streets. . . . . The city council may, by ordinance, prescribe general rules directing the superintendent of streets and the contractor as to the materials to be used, and the mode of executing the work, under all contracts thereafter made." And the same act, as amended in 1891 (Stats. 1891, p. 196), provides in section 3: "Before order-

ing any work done or improvement made, which is authorized by section 2 of this act, the city council shall pass a resolution of intention so to do, and describing the work. . . . . Before passing any resolution for the construction of said improvements, plans and specifications and careful estimates of the costs and expenses thereof shall be furnished to said city council, if required by it, by the city engineer of said city." And in section 5 it is provided that, before the awarding of any contract, a notice, "with specifications," shall be given, inviting sealed proposals or bids for doing the work ordered.

It will be observed that while it is alleged that the work was to be done in accordance with specifications No. 5 and No. 12, it in no way appears from the complaints what those specifications contained, as they are not set out *in haec verba*, or even in substance. It is impossible, therefore, to ascertain from the complaints what work was intended or was ordered to be done, or what the contract for the work was, except that it was for grading, graveling, and guttering the street, and constructing cement curbs and cement sidewalks along the sides thereof.

But if we assume that the reference to the specifications as on file in the offices of the city clerk and engineer was sufficient to make them a part of the complaint, and in that respect to constitute a good pleading, still, under the law as declared in *Bolton v. Gilleran*, 105 Cal. 244, 45 Am. St. Rep. 33, they seem to be subject to objections similar to those held fatal to the assessment involved in that case.

The specifications clearly delegate to the superintendent authority to determine whether more or less work shall be done by the contractor, what materials shall be used in certain events, and whether or not the right quality and quantity of material has been used, and if he decides against the contractor, the latter must do the work all over again.

For example, the superintendent may decide, in case he wishes to favor a contractor, that the subgrade contains no "material unsuited for foundation purposes" which need be removed; that a small "allowance for settling" is enough; that the crown of the street as constructed conforms "with the cross-section on file," and no change is necessary; that no "culverts" are needed; that the shade of the sidewalk as laid is satisfactory; and may solve all doubts in favor of the contractor.

On the other hand, he may decide, in case he is not friendly to the contractor, that the subgrade contains material unsuited for foundation purposes, and require the same to be removed to such depth as he may name; and he may be very particular as to the character of the material used for the "filling," and as to the "allowance for settling," and may require a large amount of "good earth or gravel" to be used; he may change the "crown of the street" so that the expense will be very much increased; he may decide that many "culverts" are necessary, and that those put in shall be of stone or brick or iron instead of wood, and thus add largely to the expense; he may solve all "doubts" against the contractor, and so make him do over again work already once done; after the sidewalk is laid he may decide that the "shade" of the same is not satisfactory to him and that the contractor must relay the walk and put in different "coloring matter."

Under such specifications it is evident that no one could intelligently bid for the contract, as he could not tell in advance what would be the exact character or extent of the work to be done, or the necessary expense of doing it. Any bidder would therefore hesitate to take such a contract to do the work, unless his bid was placed at a high figure, or he felt sure he would be favored by the superintendent.

In the case above cited it is said: "The legislative department of the city has no power to delegate to any other officer or body the authority to determine upon the necessity of making such improvement, or the character or extent of any improvement which it may itself direct to be made. In the language of Mr. Dillon (Dillon on Municipal Corporations, sec. 96): 'It is not competent for the council to pass an ordinance delegating or leaving to any officer or committee of the corporation the power to determine the mode, manner, or plan of the improvement.'" The court then cites several cases in which it has been held that no valid assessment upon property can be made under an order directing the improvement, and, among others, one where the work was to be done "in such manner as the city superintendent shall direct." The court further said: "A contract in terms like the present gives to the superintendent of streets the opportunity to make the cost of the improvement greater

or less, according to his desire to favor or injure the contractor, vests him with an illegal discretion, tends to prepare the way for an unfair assessment and opens wide the door to fraud or favoritism." (See, also, *Warren v. Chandos,* 115 Cal. 382, and *Perine Contracting etc. Co. v. Pasadena,* 116 Cal. 6.) In the first of these cases it is said on page 386: "In *Bolton v. Gilleran, supra,* it was held that a contract which gave to the superintendent of streets the power to increase or diminish the cost of the improvement, after the contract had been entered into, by requiring a greater or less amount of material for its completion as he should determine, rendered the assessment invalid."

Several other points are made by appellants, but in view of what has been said they need not be considered.

Under the authorities above cited we conclude that the demurrers should have been sustained, and advise that the judgments appealed from be reversed and the causes remanded.

Searls, C., concurred.

For the reasons given in the foregoing opinion the judgments appealed from are reversed and the causes remanded.

                    Temple, J., Henshaw, J., McFarland, J.

Hearing in Bank denied.