[Civ. No. 1058.   Third Appellate District.—February 19, 1913.]

## C. B. BURNHAM Respondent, v. H. R. ABRAHAMSON et al., Defendants; H. R. ABRAHAMSON, Appellant.

MUNICIPAL CORPORATIONS—CONSTRUCTION OF SIDEWALKS—PLANS AND SPECIFICATIONS.—A city board of trustees may adopt as ·special plans and specifications for the construction of a cement sidewalk, previous general plans and specifications which were invalid because adopted by resolution rather than by ordinance.

ID.—SUPERVISION OF WORK—PROVISIONS IN PLANS RESPECTING.—Specifications for a cement sidewalk are not invalid because of a provision therein requiring the work to be done under the supervision of an inspector appointed by the superintendent of streets, at the time unauthorized by the Vrooman Act, where the work is done under the direction of the superintendent as required by section 6 of that act.

ID.—ASSUMPTION OF ESTABLISHMENT OF SIDEWALK GRADES.—Specifications for the construction of a cement sidewalk are not invalid because they assume that the sidewalk grades have been established.

ID.—FORECLOSURE OF LIEN FOR IMPROVEMENTS—APPEAL.—On an appeal, where the action was to enforce a lien following an assessment for the construction of a cement sidewalk, from the judgment on the judgment-roll alone, every fact essential to the support of the court's findings and the judgment must be presumed to have been proved.

ID.—PLEADING—DEFECTS IN COMPLAINT CURED BY ANSWER.—A complaint, in an action to enforce a lien following an assessment for the construction of a sidewalk, which does not allege that the sidewalk grades have been established, is cured by the answer, of which the specifications, from which it may be inferred the grades have been established, are made a part.

ID.—SPECIFICATIONS FOR SIDEWALK—DELEGATION OF AUTHORITY TO CONTRACTOR OR SUPERINTENDENT OF STREETS.—Specifications for a cement sidewalk that all concrete for the foundation shall be composed of one part Portland cement, two parts coarse, clean sand, and four parts clean hard sandstone, granite, basalt, porphyry, or other close-grained rock, free from loam, etc., and that the finishing material shall contain sufficient lampblack or other coloring material to give the work a dark slate or brick red color, are not invalid as delegating to the superintendent of streets or to the contractor authority to determine the materials to be used.

ID.—LIENS FOR PUBLIC IMPROVEMENTS—TECHNICALITIES DISCOURAGED.—Courts frown upon defenses, interposed to the enforcement of liens for public improvements, which are based upon technicalities having no substance behind them.

APPEAL from a judgment of the Superior Court of Alameda County. F. B. Ogden, Judge.

The facts are stated in the opinion of the court.

Albert H. Elliot, and R. M. F. Soto, for Appellant.

Franklin P. Nutting, and Beverley L. Hodghead, for Respondent.

HART, J.—This is an action for the foreclosure of a lien following an assessment for the construction of a cement sidewalk upon which abuts the real property of the appellant, situated in the town of Berkeley.

Judgment for the sum of $160.05, together with interest thereon at the rate of ten per cent per annum, from the thirtieth day of July, 1909, . . . , and decreeing that said sums shall be a valid lien upon the real estate described in the complaint and that said real property shall be sold to satisfy said lien, was rendered and entered.

This appeal is from the judgment so rendered and entered, on the judgment-roll alone.

The appellant urges a number of objections to the validity of the assessment, the most important of which is that plans and specifications for the work were not legally adopted by the board of trustees of said town of Berkeley.

The complaint sets forth in detail the proceedings, as required by the General Street Law, culminating in the construction of the sidewalk, the assessment and the subsequent proceedings authorizing and finally resulting in the institution of this action. Paragraph 7 of said complaint reads: "That before passing the resolution for the construction of said work or improvement, plans and specifications and careful estimates of the costs and expenses thereof had been required by it to be furnished to said board of trustees by the town engineer of said town, and special specifications therefor had been furnished by him." It is alleged that, after the specifications referred to in paragraph 7 were furnished the board of trustees by the town engineer, said board passed a resolution "declaring that it deemed the work to be required by the public interest and convenience, and order-

ing and providing for said street work to be done, and by directing its clerk so to do, caused said order to be published for two days, and also in like manner caused notice thereof *with specifications* to be posted and kept posted conspicuously for five days near the chamber door of said board of trustees, inviting sealed proposals or bids for doing the work ordered, and also in like manner caused notice of said work inviting said proposals, and referring to the *specifications* posted or on file describing the work so ordered to be done, to be published for two days," etc. It is then shown that sealed proposals for said work were received by the board; that among the proposals so received was one from the plaintiff in which he agreed to do the work "fully in all respects as required by the specifications at the following prices, viz.: Cement sidewalks, per square foot, 18½ cents"; that the plaintiff's said bid was duly accepted by said board, and that thereafter, the owners of three-fourths of the frontage of lots and lands upon the street whereon said work was to be done not having within the prescribed time after the notice of the award of the contract to the plaintiff elected to take or do the work at the price at which the same had been awarded, the street superintendent entered into a written contract for said work with the plaintiff in accordance with the terms of his proposal or bid; that the plaintiff, by said contract, agreed to begin said work on the fourth day of June, 1907, and to complete the same within sixty days thereafter, and that he would do and perform all said work "according to the specifications therein and *hereinbefore* mentioned, and under the direction and to the satisfaction of said street superintendent and that the materials used should comply with the specifications," etc.; that "the plaintiff did and caused to be done all the work in said contract and specifications mentioned, and duly performed on his part in every respect the said work according to the specifications and the terms of the contract and with materials complying with the specifications, and under the direction and to the satisfaction of said superintendent of streets," etc.

The answer, by specific averments, controverts many of the material allegations of the complaint, denying that, before passing the resolution therein mentioned for the construction of the work or improvements stated, the town engineer

was ever required by the board of trustees to furnish plans and specifications or any estimates of the costs or expenses of said work, or, at any time during the course of the proceedings set forth in the complaint, did said town engineer furnish to said board of trustees any plans or specifications for, or any estimate of the cost or expenses of, said work or improvements, etc.

The answer then expressly admits that the board of trustees passed the resolution of intention and the resolution ordering the work to be done, mentioned in paragraphs 4 and 8, respectively, of the complaint, but alleges "that, in addition to the substance thereof set forth in said complaint, each of said resolutions provided that said work, or the improvements in said complaint mentioned, should be done in accordance with the specifications contained in resolution 1805A"; that "the clerk of said board did post and publish, respectively, notices inviting sealed proposals or bids for doing said work, as alleged in paragraph 8 of said complaint, but that said notices, so posted and published, respectively, each required that said work should be done in accordance with the specifications contained in said resolution 1805A; that the only specifications referred to in such published notice, and the only specifications posted with said notice inviting said proposals or bids, were those contained in said resolution 1805A, which said resolution was posted as and for such specifications with said notice"; that the only specifications referred to or mentioned in the contract entered into between the street superintendent and the contractor and in accordance with which said work was to be done were the specifications contained in said resolution 1805A, and that "in said contract it was agreed by the plaintiff herein that said work would be done in accordance with said specifications." It is alleged that said resolution 1805A was passed and adopted by the said board of trustees on the twenty-sixth day of February, 1906—some months prior to the time at which proceedings were initiated by the board of trustees for the work herein involved. Said resolution is made a part of the answer and is annexed thereto.

The court found that "all the allegations of the plaintiff's complaint, excepting those contained in paragraph 7 thereof, are true," and that "all the allegations of paragraphs A, B,

C and D of defendant, H. R. Abrahamson's, answer are true,'' said paragraphs of said answer referring to resolution 1805A as above indicated. The court further found that, prior to the adoption of the resolution of intention, an estimate had been furnished to the board of trustees by the town engineer showing the number of square feet of the sidewalk proposed to be constructed and that ''said estimate ever since has been and now is on file in the office of the clerk of said board and said town;'' that ''by the adoption of resolution 1805A the board of trustees of the town of Berkeley did, in accordance with law, prescribe general rules directing the superintendent of streets and the contractor as to the materials to be used and the mode of executing the work on all contracts for sidewalks after the date of the adoption of said resolution, to wit: February 26, 1906; that said plans and specifications contained in resolution 1805A were at all times during the proceedings mentioned in plaintiff's complaint herein, on file in the office of the clerk of the said board of trustees, and by the reference to said plans and specifications in the resolution of intention, and in each of the other resolutions, and notices, contracts, and other documents referred to in said complaint, said board adopted the said plans and specifications upon file in said office as and for *special plans and specifications* for the particular work and improvements involved in this action.''

As stated, the most important contention of the appellant is that the assessment is void because specifications were not adopted and annexed to the resolution ordering the work to be done. The argument is that, the court having found that the only allegations of the complaint (paragraph 7) pretending to disclose that specifications were adopted were untrue, there is nothing left, so far as that essential is concerned, to support the judgment. But the obvious answer to this argument is that the answer in effect alleges that the board of trustees adopted for the work involved here certain specifications which, by a resolution, had been previously adopted by said board as those according to which work of the character of that concerned here was generally to be done, and, assuming that the board legally adopted said specifications for the work in the present case, then it must be held that the answer supplies the defects of the complaint in that respect, and

upholds the findings of the court that specifications were duly adopted by the board for the work. The answer, it will be recalled, alleges that "in addition to the substance thereof set forth in said complaint, each of said resolutions (referring to the resolution of intention and the resolution ordering the work to be done) provided that said work, or the improvement in the said complaint mentioned, should be done in accordance with the specifications contained in resolution 1805A." This was, of course, sufficient to tender an issue upon the matter of the specifications, and, if found to be true, justified the findings of the court in that regard.

But it is insisted that the board of trustees was without legal authority to adopt the specifications contained in resolution 1805A as the special specifications for the work. This contention is inspired by a provision in section 6 of the General Street Law and some language referring to said provision used in the case of *Santa Cruz R. R. Co.* v. *Heaton,* 105 Cal. 162, [38 Pac. 693].

The provision referred to as contained in said section of the street law reads: "The city council may *by ordinance* prescribe general rules directing the superintendent of streets and the contractor as to the materials to be used, and the mode of executing the work under all contracts thereafter made." The supreme court, in the case just mentioned, holding against the contention that said provision was mandatory or that it was an imperative duty of the city council to prescribe the general rules therein provided for, declared that, when exercising its discretion under said provision and prescribing general rules, the board must do so *by ordinance,* the implication being that the adoption of such rules by *resolution* would not constitute a compliance with the terms of said provision. It is, therefore, the position of the appellant that the board of trustees in this case, having adopted as the specifications in conformity to which the work or improvements here were to be made those general specifications prescribed by resolution 1805A, failed to prescribe and adopt, legally, any specifications whatsoever herein. Of course, if this position were sound, under the authorities the assessment to foreclose which this action was brought would be invalid and the action would fall. (*Schwiesau* v. *Mahon,* 110 Cal. 543, [42 Pac. 1065]; *Diggins* v. *Mahon,* (Cal.) 42

Pac. 1066; *Gray* v. *Richardson,* 124 Cal. 461, [57 Pac. 385].)
But we are of the opinion that the contention cannot be sus-
tained. The board, as we have seen, adopted for the work
concerned in this case plans and specifications which it ap-
pears the board had previously attempted to adopt as gen-
eral plans and specifications by which all work of the
character of that involved in this case was to be done in the
town of Berkeley. Conceding that the previous or original
adoption of said plans and specifications *by a resolution* was
a void act or one which possessed no binding legal effect,
still we can perceive no legal objection to the action of the
board in adopting them as the *special plans and specifications*
for a particular work or improvement. In other words, and
to make the proposition clearer, where the board of trustees
has adopted special specifications for a particular work or
improvement, we cannot see that it makes any difference, in
a legal aspect, where or from what particular source the
board might have obtained the plans and specifications so
adopted where, as here, it is evident that the specifications had
been prepared by the engineer engaged by the town to per-
form such duty. When the board adopted the plans and
specifications contained in resolution 1805A for the particu-
lar work involved in this action, such plans and specifications
then became the special plans and specifications for said work
in as true a sense as though they had been prepared specially
for that particular work and for no other. General specifi-
cations, as counsel for the appellant declare, could operate
in such a case only where they had been adopted by means
of or through the agency of an ordinance regularly passed by
the governing board, and in such case the specifications pre-
scribed would not be special as to any particular work to
which they applied, but the improvement would be carried
on under the general rules thus laid down. And, in such
case, as counsel for the appellant concede, it is probable that
no reference to such ordinance in the resolution of intention,
the resolution ordering the work to be done or in the con-
tract would have been necessary, since any bidder and owners
of property would be conclusively presumed to have knowl-
edge of such ordinance and its provisions (*Williams* v. *Bis-
agno,* 4 Cal. Unrep. 305, [34 Pac. 640, 641]), and, in the
absence of special specifications, would be presumed to know

that the work was to be done according to the general specifications prescribed by the ordinance. As stated, the court found that the plans and specifications which were found in a document—called resolution 1805A—on file in the office of the board, were adopted by the board as the *special* plans and specifications for the work described in the complaint, and this is sufficient to fully meet the demands of the statute in that particular, the sole purpose of requiring specifications to be adopted being to enable all interested parties to secure knowledge of the character and cost of the work proposed to be done.

It is further objected that the specifications are void, because the provision therein requiring the work to be done under the supervision of an inspector, appointed by the superintendent of streets, "was unauthorized by the Vrooman Act at the time of these proceedings." But the court found that the work was done under the direction of the superintendent of streets, as section 6 of said act required, and it is to be presumed, in the absence of any record of the evidence, that that finding found sufficient support in the evidence. Such being the case, it is immaterial whether the specifications contained a provision with regard to that matter which could have no legal effect and which was, manifestly, disregarded in the prosecution of the work.

The invalidity of the specifications is next claimed because they "assume" that the sidewalk grades have been established, whereas the complaint contains no allegation with respect to that proposition. It cannot be conceived how the assumption by the specifications of the establishment of the sidewalk grades can have the effect of invalidating said specifications. They no doubt thus assumed what was true or what must be presumed to have been shown to be true by the evidence. On an appeal from the judgment on the judgment-roll alone, every fact essential to the support of the court's findings and the judgment must be presumed to have been proved. Or, as the rule is stated in all the cases: "All intendments will be made in support of the judgment, and all proceedings necessary to its validity will be presumed to have been regularly taken; and only matters which might have been presented to the court below which would have authorized the judgment will be presumed to have been thus

presented, if the record shows nothing to the contrary."
(*Von Schmidt* v. *Von Schmidt,* 104 Cal. 550, [38 Pac. 361];
*Johnston* v. *Callaghan,* 146 Cal. 214, [79 Pac. 870]; *Galvin*
v. *Palmer,* 134 Cal. 427, [66 Pac. 572]; *Butler* v. *Soule,* 124
Cal. 73, [56 Pac. 601]; *Segerstrom* v. *Scott,* 16 Cal. App. 256,
[116 Pac. 690]; *Ewing* v. *Napa Valley Brewing Co.,* 18 Cal.
App. 135, 140, [122 Pac. 836]; *Breeze* v. *Brooks,* 97 Cal.
72, [22 L. R. A. 257, 31 Pac. 742]; *Aetna Indem. Co.* v.
*Altadena Min. etc. Co.,* 11 Cal. App. 165, 173, [104 Pac. 470].)
If the fact that the grades had been established should have
been pleaded by the plaintiff, the deficiency of the complaint
in that particular was cured or supplied by the answer, of
which the specifications, from which it may be inferred that
the grades had been established, were made a part. This
defect in the complaint should have been taken advantage of
by demurrer thereto. However, on an appeal of this char-
acter, the presumption is, as above stated, that at the trial
every fact essential to the support of the judgment was con-
sidered in issue and supported by evidence.

The specifications are also said to be defective and there-
fore invalid in that they provide in the alternative for the
materials to be used in the work—that is, they provide that
either of several different kinds of materials may be used
in the construction of the work, thus, as the argument goes,
delegating to the superintendent of streets or to the con-
tractor the discretion of determining what particular kind or
kinds of materials may be used. (*San Jose Imp. Co.* v.
*Auzerais,* 106 Cal. 498, 500, [39 Pac. 859]; *Stanisbury* v.
*White,* 121 Cal. 433, 434, [53 Pac. 940]; *California Imp. Co.*
v. *Reynolds,* 123 Cal. 88, 92, [55 Pac. 802]; *Stocking* v.
*Warren Bros.,* 134 Wis. 235, [114 N. W. 789].)

The rule laid down in the above cases is stated in *Bolton*
v. *Gilleran,* 105 Cal. 244, 253, [45 Am. St. Rep. 33, 38 Pac.
881], as follows: "The legislative department of the city has
no power to delegate to any other officer or body the author-
ity to determine upon the necessity of making such improve-
ment, or the character or extent of any improvement which
it may itself direct to be made. . . . 'It is not competent for
the council to pass an ordinance delegating or leaving to any
officer or committee of the corporation the power to deter-
mine the mode, manner, or plan of the improvement.' (Dil-

lon on Municipal Corporations, sec. 96.) . . . A contract in terms like the present gives to the superintendent of streets the opportunity to make the cost of the improvement greater or less, according to his desire to favor or injure the contractor, vests him with an illegal discretion, tends to prepare the way for an unfair assessment and opens wide the door to fraud or favoritism.'' An additional reason given in that case for the rule thus declared is that definite information should be given as to the work to be done and the amount for which the assessment is to be made, in order that the property owners, to whom the statute gives the right of taking the contract at the price at which it was awarded to the contractor, may intelligently determine whether it will be to their advantage to take the contract themselves. The foregoing views are sound and unimpeachable, and in a case where it can be said without question that such power as that thus animadverted upon has been delegated to the superintendent of streets or to the contractor, the assessment must, of course, be held to be void. But it is not to be understood that in all cases where some discretion is conferred upon the superintendent of streets as to the materials to be used the assessment for that reason must fail. As is said in *Chase* v. *Trout,* 146 Cal. 365, [80 Pac. 81], ''however desirable it would be to have the precise details of the work, even to the smallest fraction, fixed in advance of the bids, so that the exact cost to the contractor, as well as the contract price, may be known at the time the contract is let, it always has been and always will be impossible to do so.'' Again, in *Haughawout* v. *Hubbard,* 131 Cal. 678, [63 Pac. 1078], it is said: ''To some extent such details must depend on unanticipated contingencies of the actual construction. The specifications must, therefore, always fail, more or less, in certainty or completeness of detail, and hence the most accurate and detailed specifications must leave unprovided for many questions arising in the course of the work as to the kind and amount of work or materials and other details of construction. The giving of discretion to some person as to all these details, the culverts possibly excepted, is inevitable in every such work. If not vested in and exercised by the street superintendent, it will be exercised by the contractor himself. The

statute recognizes this condition and itself provides that the work must be done to the satisfaction of the street superintendent.''

The particular portions of the specifications which it is claimed are amenable to the criticism under consideration are contained in sections 9 and 10 thereof. Section 9 provides that ''all concrete for the foundation or base course . . . of cement sidewalks shall be composed of one part Portland cement, two parts of coarse, clean sand, and four parts of clean, hard sandstone, granite, basalt, porphyry *or other close grained rock,* free from loam, clay, shale or other soft material.'' That part of section 10 to which objection is made for the reason suggested provides that ''the finishing material shall contain a sufficient quantity of lamp-black *or other coloring material* to give the finished work a dark slate or brick red color.''

We are unable to detect in these provisions of the specifications the giving to the superintendent of streets or to the contractor an excess of authority or unauthorized discretion in the matter of the character of the materials to be used in the work. There is nothing in the record before us indicating that there would be any difference in cost or price between the two different kinds of materials from which it is therein provided that the concrete for the foundation of the sidewalk shall be made, and certainly we cannot take judicial notice of the fact, if it be a fact, that the one kind is more expensive than the other. (*Burns* v. *Casey,* 13 Cal. App. 154, [109 Pac. 94].) And the same observation applies to the criticism of the provision with respect to the coloring of the material. Nor can it be said that, conceding that the one kind of material or the one kind of coloring would be more expensive than the other, the contractor was not able to make a just and an intelligent bid for the work or that the property owners were not furnished by the specifications complained of sufficient information to enable them to form an approximately satisfactory judgment upon the exact total cost of the work in any event. At any rate, as stated, it cannot be said, as a matter of law, that the parts of the specifications here criticised confer upon either the street superintendent or the contractor an unauthorized discretion as to the matters to which they refer. It might be that one or the

other kinds of material may be found, when the work is commenced, not to be as available as the other. Indeed, many contingencies may arise in work of this character which cannot be foreseen, and which could not be met or overcome in the absence of some discretion committed to the superintendent of streets, and in such case the work would either have to be stopped or the contractor proceed with it at the peril of losing the value of his services in the work and the materials used therein.

In considering the points presented in this case, we have kept in mind the rule that proceedings in taxation of the character of those involved here are *in invitum*, and that in such cases it has always been the rule that the requirements of the laws or statutes prescribing them should be strictly observed. At the same time we have borne in mind the fact that the later decisions of our supreme court have disclosed an inclination to frown upon defenses interposed to the enforcement of liens in cases of this nature based upon technicalities having no substance behind them. The common and well-understood method of enforcing the improvement of streets, sidewalks, and the building of sewers, etc., is through the laws passed by the legislature for that purpose. These laws are mere police regulations and are absolutely essential to the health, convenience, and comfort of all the inhabitants of a town or city, and the payment for such improvements may very properly be coerced against those owning the property directly benefited thereby. Of this power in the municipality, granted to it by the state, all property owners have full knowledge and purchase and own their property in towns and cities subject thereto. Therefore, while the tax thus authorized to be exacted is not within the ordinary taxing power of the state, and the doctrine of *in invitum* should be applied to proceedings instituted in the exercise of the right thus to burden the property of persons, still there is no sound reason at the bottom of those propositions which would require such proceedings to be prosecuted with a degree of strictness in the observance of the law authorizing them that would inevitably lead, in nine cases out of ten, to the invalidation of an assessment made therein. As is so well said by Mr. Justice Henshaw, in *Haughawout*

*v. Raymond,* 148 Cal. 312, [83 Pac. 53]: ''Notwithstanding that the proceedings for street work and sewer work, like proceedings in taxation, are *in invitum,* and that, therefore, a fairly strict and accurate compliance with all the statutory requirements is necessary, this is the limit to which any court should be expected to go in disposing of the questions which are involved. The contractor who has honestly and substantially complied with his contract, of which the property owners have received and will continue to receive the benefit, is quite as much entitled to the protection of the law as are the property owners themselves, and upon the other hand, an endeavor—even a successful endeavor—upon the part of property owners to defeat the just claims of such a contractor by a resort to the extreme technicalities of the law can, upon the whole, operate only to the disadvantage of the property owners themselves, since it necessarily tends to increase the price at which any and all future contractors will be willing to engage in work, payment for which, after having been duly performed, is met by harassment and vexatious delay, with the prospect at the end of utter failure of recovery.''

The defendant in this case has not shown that he has suffered substantial or any wrong by reason of the alleged defects in the proceedings leading to the assessment which the plaintiff by this action seeks to enforce against his property, nor does he complain that he has not received and is not now enjoying benefits accruing to him by reason of the improvements made upon his property by the labor and the materials of the plaintiff. Under such circumstances and in the absence of a showing of a substantial departure from the provisions of the statute by the authority of which the improvements were made and the assessment levied, it would result in manifest injustice to disturb the judgment appealed from.

For the reasons herein given the judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.