[Civ. No. 3199.   First   Appellate   District,   Division   One.—January
29, 1920.]

A.  P.  SHEPHERD, Appellant, v. E. H. CHAPIN, as
Superintendent of Streets, etc., et al., Respondents.

[1] STREET LAW—ADOPTION OF PLANS AND SPECIFICATIONS—REFERENCE
TO IN RESOLUTION OF INTENTION—CERTAINTY OF IDENTIFICATION.—
A recital in a resolution of intention for the improvement of a
portion of a city street that the work is to be done "in accord-
ance with the plans and specifications heretofore adopted for
doing said work and now on file in the office of the city clerk"
is not uncertain and misleading because there are two sets of
plans and specifications on file, where one of the sets was filed
the same day the resolution of intention was passed and referred
to the terminal streets by the names by which they were then
designated and the other set was filed over four years earlier
and referred to the streets by which they are designated at such
earlier date, the name of one of the terminal streets having sub-
sequently been changed.

[2] ID.—ALTERNATIVE PROVISIONS FOR IRON OR STEEL CULVERTS—AB-
SENCE OF INJURY.—Plans and specifications are not invalidated by
an alternative provision therein for culverts of corrugated iron *or*
steel, where such provision will not seriously affect the property
owners.

[3] ID.—CHARACTER OF GRAVEL REQUIRED—CERTAINTY OF SPECIFICA-
TIONS—COMPLIANCE WITH.—Such specifications are not indefinite
and uncertain as to the character of gravel required in that they
provide that such gravel shall be "of sound trap rock or granite
composition equal to the gravel found in the San Joaquin River,"
where they require that no work shall be accepted which may be
defective in its construction or deficient in any of the requirements
therein provided.   Such specifications cannot be complied with by
the furnishing of any other quality of gravel than that specified
merely because it may be equal to that, or be in fact found, in
the San Joaquin River at some remote distance from the city
wherein the improvements are to be made.

[4] Id.—Obedience to Instructions—Construction of Specifica-tions.—Such specifications, in requiring that "the contractor shall be held liable for the faithful observance of any instructions which may be delivered to him or to his representative on the work," are not subject to the objection that the contractor is made liable for the instructions given him by any person, where such requirement is but a portion of a paragraph of the specifications and is immediately preceded by a provision that "the contractor shall be constantly on the work during its progress, or shall be represented by a foreman who is competent to receive and carry out any instructions that may be given him by representatives of the street superintendent."

[5] Id.—Issuance of Bonds—Identification of Act to be Issued Under — Sufficiency of Resolution of Intention.—Where the resolution of intention recites that all the proposed work shall be done under the Improvement Act of 1911, that serial bonds shall be issued to represent each assessment of twenty-five dollars or more, and that they shall extend over a period not to exceed nine years *from the second day of January next succeeding their date, payable in equal annual installments on the second day of January each year thereafter,* it sufficiently appears that the bonds are to be issued under the Improvement Act of 1911, and not under the Improvement Bond Act of 1915.

[6] Id. — Time Bonds to Run — Sufficiency of Specification in Resolution of Intention.—Section 61 of the Improvement Act does not require that the resolution of intention shall distinctly specify a definite time in which the bonds are to run, it being sufficient if it states, in the language of the statute, that the bonds "shall extend over a period not to exceed nine years from the second day of January next succeeding their date."

[7] Id. — Special Taxation for Local Improvements — Constitu-tional Right of Property Owners to be Heard.—No constitutional rights of property owners are invaded in the enactment of statutes for special taxes for local improvements if, at some stage of the proceeding, the property owner has the right to a hearing upon the question as to what portion of the tax shall be assessed upon his land.

[8] Id.—Statutory Right to Protest Against Work—When Effective to Avert Further Proceedings.—The right of property owners to protest and avert further proceedings is purely the creature of the statute, and this privilege afforded to the land owner by the "Improvement Act of 1911" is a conditional one only, and in order to be effective requires the approval of more than one-fifth of the members of the board.

[9] Id.—Notice of Improvement—Size of Letters—Immaterial Defect.—A notice of improvement posted by the superintendent of

streets is not fatally defective because the length of the letters comprising said words is from one twenty-fifth to one sixty-fourth less than the one-inch prescribed by the statute.

APPEAL from a judgment of the Superior Court of Fresno County. M. F. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Lewis H. Smith for Appellant.

Everts & Ewing for Respondents.

WOOD, J., *pro tem.*—The plaintiff is the owner of certain property situate on Mariposa Street, in the city of Fresno. He brought this action to enjoin the superintendent of streets from entering into a contract with the Improvement Company pursuant to an award for the doing of certain work upon the street, and has appealed from a judgment entered after a demurrer was sustained to his complaint.

[1] On February 3, 1919, the board of trustees of the city passed its resolution of intention of ordering certain work on the street from the northeast line of M to the south line of Devisadero Streets, which recited that it was to be done ''in accordance with the plans and specifications heretofore adopted for doing said work and now on file in the office of the city clerk.'' The same day complete plans and specifications for the work were filed. On January 5, 1915, and some fifteen months before the enactment of an ordinance changing the name of Silvia Street to Devisadero, the board adopted plans and specifications for work on said Mariposa Street between the northeast line of M⸱ Street and the south line of *Silvia* Street, which have never been specifically rescinded, altered, or abandoned. It⸱ is the contention of the appellant that, as the two sets of plans and specifications on file call for work materially and substantially different, the property owner is not informed of the character and⸱ nature of the contemplated work by the mere recital in the notice of intention that it is to be done in accordance with those on file. He does not question that the rule as to repeals by implication is applicable to municipal affairs, but claims that it applies to, what he terms,

legislative acts only and not to those of an administrative character such as are required in the improvement of streets. The distinction is unimportant here, as we are satisfied that in any event the contention of appellant cannot be sustained.

He does not suggest that any person was in fact misled by the reference. Strictly speaking, the plans and specifications filed with the resolution were the only ones for the doing of the work between the lines there mentioned, for, as we have seen, the earlier ones provided for work between M and *Silvia* Streets, and not between M and Devisadero. Aside from the very remote probability that anyone would have ignored the complete and detailed plans and specifications filed immediately preceding the adoption of the resolution and resurrected those filed more than four years previously, there is further this significant circumstance to be considered: Appellant lays much stress upon the radical difference in the two sets of plans as to the type of pavement and the wearing surface. Specifically the earlier ones called for ''a cement concrete base four inches thick, *an asphaltic concrete binder course one inch thick, and an asphaltic wearing surface two inches thick.* Now, the resolution of intention provides that the street is to be paved with a pavement consisting of a cement concrete base four inches thick, and *a bithulitic wearing surface one and one-half inches thick.* In the plans and specifications last filed the description and character of materials required for the wearing surface alone and the directions for mixing and laying the same fill seven pages of typewritten matter in the transcript. This work forms quite a substantial part of that contemplated in the resolution. Under all the circumstances it is incredible that there could exist any misunderstanding as to which plans and specifications furnished the description of the work to be done.

[2] The next objection is that the plans and specifications of February 3, 1919, call for culverts of corrugated iron *or* steel, and it is alleged that the cost or. price of steel is materially and substantially less than corrugated iron. This allegation is a mere opinion. It does not show what the difference in cost is, or how it may injuriously affect the property owner. In *Thoits* v. *Byxbee,* 34 Cal. App. 226, [167 Pac. 166], it was held by this court

that the specifications there considered were not inval-
idated by a provision authorizing the street superin-
tendent to change the proportions of sand and rock in the
concrete, for the reason that it appeared that it would not
affect the cost of the work· so far as these ingredients were
concerned.

In *Burnham* v. *Abrahamson*, 21 Cal. App. 248, [131
Pac. 338], where the specifications provided that the cement
should be composed in part of hard sandstone, granite,
basalt, or other close-grained rock, it was said: "One of the
kinds of materials may be found when the work is com-
menced not to be as available as the other. Indeed, many
contingencies may arise in work of this character which
cannot be foreseen, and which could not be met or overcome
in the absence of some discretion in the superintendent of
streets."

So, too, it may be that the conditions in the industries
made it necessary here to provide in the alternative for
the use of iron or steel in order to assure a completion of
the work within a reasonable time, and, as we have said, it
does not appear that it will injuriously affect the property
owners.

[3]   The next proposition advanced is that the specifica-
tion as to the character of the gravel required is indefinite
and uncertain in that it is provided that such gravel shall
be "of sound trap rock or granite composition equal to the
gravel found in the San Joaquin River." It is alleged in
the complaint that in the San Joaquin River there is found
gravel of great and substantial variations and differences in
hardness, composition, durability, and tensile strength. The
specifications, however, require that no work shall be ac-
cepted which may be defective in its construction or de-
ficient in any of the requirements therein provided. The
complaint does not aver that in the locality near Fresno
gravel is found that is not of sound trap rock or sound
granite formation; and we fail to see how the specifications
can be complied with by the furnishing of any other quality
of gravel merely because it may be equal to that, or be in
fact found, in the San Joaquin River at some remote dis-
tance from Fresno.

[4]   The next objection raised is that the specifications
require that "the contractor shall be held liable for the

.faithful observance of any instructions which may be delivered to him or to his representatives on the work,'' and that the contractor is, therefore, made liable for the instructions given him by *any person,* as they do not specify for whose instructions he shall be held liable. As pointed out by respondent, a sufficient answer to this is that the words last quoted are a part only of an entire paragraph, and are preceded by the following: ''The contractor shall be constantly on the work during its progress, or shall be represented by a foreman who is competent to receive and carry out any instructions that may be given him by representatives of the street superintendent.''

[5] It is claimed that the resolution of intention is defective in that it cannot be ascertained whether the bonds are to be issued under the Improvement Act of 1911 [Stats. 1911, p. 730], or the Improvement Bond Act of 1915 [Stats. 1915, p. 1441]. The resolution of intention in substance recites that all of the proposed work shall be done under the former act; that serial bonds shall be issued to represent each assessment of twenty-five dollars or more; that they shall extend over a period not to exceed nine years from the second day of January next succeeding their date, payable in equal annual installments on the second day of January each year thereafter. While there might have been a more definite reference to the act, yet this was sufficient, as there can be no issuance of bonds under the bonding act unless such intention is declared in the resolution of intention (see section 4). Furthermore, under the latter act installments of principal are payable on the second day of July each year, and there is no limitation there as to the amount for which the bond may issue.

[6] It is insisted that a proper interpretation of section 61 of the Improvement Act requires that the resolution of intention shall distinctly specify a definite time in which the bonds are to run, and that it is not sufficient, as was done here, to state, in the language of the statute, that the bonds ''shall extend over a period not to exceed nine years from the second day of January next succeeding their date.''

This section is almost identical with section 3 of the Bond Act [Stats. 1885, p. 148] under consideration in *Cohen* v. *Federal Construction Co.,* 171 Cal. 547, [153 Pac. 916], except that in section 61 there is no express require-

ment that the notice included in the warrant shall describe the bonds, as is made mandatory by section 3 of that act. In each act, however, the form of bond to be issued is set out at length, with a blank space provided to fill in the term that the bond is to run. In that case the court held that it was sufficient for the council to fix the term of the bond at any time before the warrant was issued, that being the earliest date at which the property owner was required to elect whether he would pay in cash or suffer bonds to issue. It also held that the language, "the like description of said bonds shall be inserted in the resolution ordering the work," etc., was not to be construed as requiring the resolution of intention to state the period the bonds are to run. The case was decided more than three years before the adoption of the resolution in the instant case, and may have been relied upon not only by the Fresno board of trustees, but, perhaps, by other municipalities, as authority that the board can, at any time before the issuance of the warrant, fix the definite period for which the bonds are to run. Of course, as to what matters should be stated in the warrant, in order to comply with the statute, does not arise here.

In passing, it may be further noted that section 26 of the act provides that no proceedings prior to the assessment shall be held invalid by any court for any error, informality, or other defect in the same, after the actual publication and posting of the resolution of intention, and by section 16 all such errors, informalities, defects, and irregularities are waived unless objection be made to the council within ten days after the notice of the award of the contract.

[7] The point is made by the appellant that inasmuch as the owners of eighty-eight per cent of the property liable to assessment protested against the doing of the work, the board had no power thereafter, by a four-fifths vote or otherwise, to take any further proceedings for the improvement. The courts have repeatedly held, in substance, that no constitutional rights are invaded in the enactment of statutes for special taxes for local improvements if, at some stage of the proceeding, the property owner has the right to a hearing upon the question as to what portion of the tax shall be assessed upon his land. The latest expression to this effect, to which our attention has been directed, is found

in *St. Louis Land Co.* v. *Kansas City,* 241 U. S. 430, [60
L. Ed. 1072, 36 Sup. Ct. Rep. 647]. This declaration, as to
the constitutional right of the property holder to a hearing,
implies that there is a power vested in some tribunal
to decide against him. No case has been cited where it has
ever been held that the property owner, or any number of
the property owners affected, had the right, by protest or
otherwise, to arrest further proceedings unless such right
was conferred by statute. The case of *Field* v. *Barber As-
phalt Co.,* 194 U. S. 618, [48 L. Ed. 1142, 24 Sup. Ct.
Rep. 784, see, also, Rose's U. S. Notes], involved a provision
of a law of Missouri giving to a majority of the *resident*
owners of property liable to assessment a right to stop the
proceedings, but afforded no opportunity to any nonresident
owner to protest; and yet, the supreme court of the United
States reached the conclusion that the law violated no con-
stitutional rights of the latter. The effect of the decision is
that cases may there arise in which none of the property
owners have a right to stop the proceedings or to protest.
[8] It follows from what has been said that the right to pro-
test and avert further proceedings is purely the creature of
the statute, and that this privilege afforded to the land
owner by the "Improvement Act of 1911" is a conditional
one only, and in order to be effective requires the approval
of more than one-fifth of the members of the board.

It is urged that the act of 1915 (Stats. 1915, p. 1464),
in so far as it attempts to amend sections 68, 70, and 72 of
the Improvement Act of 1911, is unconstitutional and void.
These sections relate to proceedings to be taken for the col-
lection of the moneys due upon a bond after a payment
becomes delinquent, and, as suggested by respondent, are in
no way affected by any of the proceedings to this date.
Moreover, we may add that the defects indicated have
been remedied by the legislature of California (Stats. 1919,
p. 554).

It is claimed that the ordinance of the city of Fresno,
passed some years ago, adopting all grades by the adoption
of a grade map, does not sufficiently indicate the points on
Mariposa Street from which the grades are to be determined.
There is an ordinance relating to curbs, which is referred
to but not inserted in the record, and it is not clear what
bearing it may have upon the question. The copy of the

portion of the grade map relating to Mariposa Street, which is attached to the transcript, shows that at every street intersection there is a circle touching each corner, within which is placed a number purporting to denote in feet the elevation of the curbs at the point indicated, measured vertically from an established bench-mark as a basis. From these points the ordinance provides that the grades are to be determined. The points indicated appear to be the four curb corners. The general rule is that, if reasonably practicable, an interpretation is to be avoided which results in an absurdity. Thus, any attempt to locate the points at any other places than at these corners would leave a portion of the curbs with no provision as to their elevations, and might result in a completion of the work without providing for an adequate drainage; while, in contrast, by assuming that the points are at the four curb corners, there is embraced a complete and harmonious system for all curb elevations, with a uniform drainage for this street and the intersecting ones.

[9] It is insisted that the notice of improvement posted by the superintendent of streets is fatally defective, in that the length of each of said letters comprising said words is from one twenty-fifth to one sixty-fourth less than the one-inch required by statute. One of these notices, a copy of which is attached to the complaint, appears in the record and has received our careful attention. Conceding, as claimed by appellant, that the case of *Coleman* v. *Spring Construction Co.*, 41 Cal. App. 201, [182 Pac. 473], is not an authority to the point, we are of the opinion that the printed notice is in substantial accord with the law. While the letters "O" and "C" apparently are of less length than the others, it is more than likely that it is an optical illusion caused by their eliptical form. Persons of normal vision may honestly differ as to whether the letters in the notice are the full length required; but certainly it is not the intent of the act to invalidate a notice because a microscopic examination may demonstrate that they are a hair-breadth or two less.

This disposes of all the objections.

Judgment affirmed.

Waste, P. J., and Kerrigan, J., concurred.