[Civ. No. 3259. Fourth Dist. Jan. 17, 1944.]

HUGH IRVINE et al., Appellants, v. CITRUS PEST DIS-
TRICT NUMBER TWO OF SAN BERNARDINO
COUNTY et al., Respondents.

380

Harry H. Parsons for Appellants.

Donald S. Gillespie, County Counsel, and R. J. Farrell, Deputy County Counsel, for Respondents.

MARKS, J.—This is an action to test the constitutionality of the "Citrous Pest District Control Act" (Stats. 1939, ch. 89; Deering's Gen. Laws, 1939 Supp., Act 130) which we will refer to as "the act." The cause was heard on an agreed statement of facts. Judgment went for defendants and this appeal followed.

It was agreed that the Citrus Pest Control District Number Two of San Bernardino County (hereinafter referred to as the district) and the individual defendants had functioned in exact accordance with the provisions of and powers granted in the act and had acted fairly and honestly in administering the affairs of the district. This stipulation eliminates from consideration several of the issues tendered by the pleadings. It was also stipulated that plaintiffs each owned citrus groves in the district which were subject to assessments levied by the district to pay for citrus pest control and expenses of operation; that part of their properties had "irregular or border planting" as referred to in section 65 of the act.

The only question seriously presented for our consideration is the constitutionality of the act. Plaintiffs direct their principal attack against it on the ground that its provisions violate the constitutional mandates directing that no person shall be deprived of his property without due process of law and guaranteeing to each the equal protection of the

law. Subsidiary questions are argued as follows: That the act contains a delegation of legislative power to a local board; (2) that judicial powers are vested in a local board; (3) that the act permits double taxation for the same purposes; (4) that it is not a valid exercise of the police power; (5) that there is no limitation on the amount of indebtedness the district may incur nor upon expenditures that can be made so the assessments may become confiscatory.

It seems to be the theory of plaintiffs that the act permits the assessment and taxation of property without any right of protest and review on the part of the owners, and permits the assessment and taxation of some properties within the district with valuations made on a basis different from that of other properties; that the valuations are to be fixed by the assessor which are declared conclusive with no right of review.

No question is raised, except incidentally under another heading, of the lawful organization of the district so that subject requires no notice except to say that such proceedings are instituted on petition of the owners of 51 per cent of the area of land in the proposed district; that the petition is filed with the board of supervisors of the county which must fix a time and place for hearing; that notice thereof must be given; that protests may be filed and must be considered with the petition at the hearing; that the board of supervisors must act on such evidence as is presented and may exclude lands included within the proposed boundaries or may include other lands on petition of the owners and may allow or disallow the petition for formation of the district. These provisions of the act fully satisfy the requirements of due process. This conclusion is supported by the cases next cited.

The act provides that when a pest control district is organized a board of directors shall be appointed for it. The powers of the district are defined in section 45 of the act. The board of directors is required to adopt a plan for the control of citrus pests, to estimate annually its cost and submit a budget of expenditure for each fiscal year, fix a time and place for hearing on the proposed budget and give notice of such hearing which shall include a statement "that it is the intention to raise the amount of money required to meet the proposed budget by levying a tax upon the assessed value of the citrous trees within the district in accordance with the

provisions of this act.'' The hearing must be held and all protests considered and passed upon, and the budget, or modified budget, is then to be adopted.

Section 65 of the act provides as follows:

''The county assessor in making the annual assessment of property in each and every year after the organization of the district, shall assess and enter as a separate item on the assessment roll for each parcel of real property included in the district, the value, as improvements thereon, of all citrous trees growing thereon. Such assessment shall be upon an acreage basis and the number of acres in the case of irregular or border planting, shall be determined conclusively by the assessor by counting such trees and dividing the total number by the number per acre of average planting as certified by the county agricultural commissioner. Upon completing the assessment roll of the county in each year, the assessor shall separately compute and certify to the board of supervisors, the total assessed value, as shown by said assessment roll, of all such citrous trees in the district.''

It is argued that this section empowers the assessor to place an arbitrary and unjust assessment on property without any right of protest, hearing of objections, or appeal.

It is not necessary to satisfy the constitutional requirements of due process that there be a judicial hearing and trial before the courts. It is satisfied by providing for a hearing, after notice, before a board or officer empowered to hear and determine the issues presented. (*City of Seattle* v. *Kelleher,* 195 U.S. 351 [25 S.Ct. 44, 49 L.Ed. 232]; *United States* v. *Ju Toy,* 198 U.S. 253 [25 S.Ct. 644, 49 L.Ed. 1040]; *Fallbrook Irrigation District* v. *Bradley,* 164 U.S. 112 [17 S.Ct. 56, 41 L.Ed. 369]; *In re Orosi Public Utility Dist.,* 196 Cal. 43 [235 P. 1004]; *Sherer* v. *City of Laguna Beach,* 13 Cal.App.2d 396 [57 P.2d 157]; *Estate of Stobie,* 30 Cal.App. 2d 525 [86 P.2d 883].)

We are permitted to take judicial notice of the conditions of the citrus industry in California. (*Agricultural Prorate Commission* v. *Superior Court,* 5 Cal.2d 550 [55 P.2d 495]; *Parker* v. *Brown,* 317 U.S. 341 [63 S.Ct. 307, 87 L.Ed. 315].) We can thus draw on our knowledge of the industry to the effect that scale and other such pests propagate and prey upon the citrus trees; that unless these pests are controlled the value of the trees will be destroyed.

It is evident from the provisions of the act that the basis

of the assessment is the number of citrus trees growing on a given tract. The amount of the assessment is evidently determined by a mathematical calculation involving the acreage of regular or rectangular tracts and the average number of trees per acre on irregular or border plantings. It is there evident that the important factor in determining the assessment is the amount of the budget as the acreage or number of trees per acre will remain a fairly constant figure.

While the act does not provide for notice to the property owners of the making of the proposed assessment and affords them no opportunity to protest, it does provide for notice, opportunity to protest, and hearing on the question of the adoption of the proposed budget. As the amount of the budget is the variable figure involved in fixing the amount of the assessment, notice, the right to protest, and a hearing on the amount of the budget should satisfy the requirements of due process for after the budget is fixed the computation of the assessments is a simple matter of division and amounts to no more than the performance of a ministerial act. The right to protest an assessment after the budget is fixed would be an idle act and could accomplish nothing. The performance of an idle act need not be required.

Plaintiffs argue that section 65 of the act gives the right to the assessor to *conclusively* determine the amount of the various assessments to be levied. We do not so construe the section. The assessor merely determines the acreage in the irregular or border plantings for the purpose of the assessment. Where this duty is performed fairly and impartially, and when there is no abuse of this authority, the property owners have no cause for complaint and the constitutional guaranty of due process is not violated. (*United States* v. *Ju Toy, supra.*)

It is presumed that an officer charged with a duty will perform it in accordance with the requirements of the Constitution and the law. (*People* v. *Globe Grain & Milling Co.*, 211 Cal. 121 [294 P. 3]; *Estate of Stobie, supra.*)

Further, the stipulation "that no wrong or fraud whatever, in any way, is charged against any of the defendants in this case" and that they "have performed their functions and alleged duties under the terms and conditions of the act" precludes plaintiffs from making any argument that there has been any fraud or oppression practiced in making

the assessments. Until there has been something amounting to such fraud or oppression and unjust inequality in the assessments levied the property owners cannot complain that they have been deprived of the equal protection of the law.

Counsel argues that the act is unjust and discriminatory in placing the same burden of assessment on the owner of small young trees as is placed on large full bearing trees.

Of course it is common knowledge that citrus pests infest small as well as large trees. If not controlled they spread from tree to tree and from orchard to orchard with disastrous results. It is also common knowledge that the treatment of a small tree requires less materials and less labor than that of a mature tree. To this extent the burden is not equally distributed on all owners alike. However, small young trees grow to be large old ones, and large old trees outlive their usefulness and have to be replaced with small young ones. Thus with the passing of time the burdens may be equalized. Further, there is nothing in the record to indicate that there is any variance in the size and age of the trees in the district nor that any of the trees on plaintiffs' properties are small or young. To this extent the argument is academic. Under the facts we cannot hold that this method of assessment deprives plaintiffs of the equal protection of the law. The scale from the small trees will spread to the large ones and, if not controlled, will destroy them.

Plaintiffs urge that the act permits an unlawful invasion of their property rights by authorizing others to trespass upon their properties to inspect and treat their trees against their will and without their consent. If the powers exercised under the act come within the classification of police powers this argument is without merit. It is universally held that in the exercise of its police powers the state may take or destroy private property without compensation when it is dangerous to life, health or property. (*Coelho* v. *Truckell*, 9 Cal.App.2d 47 [48 P.2d 697], and cases cited at p. 54.)

The act is attacked on the ground that it attempts to delegate legislative powers to a local board. This argument is sufficiently answered in *Agricultural Prorate Commission* v. *Superior Court, supra.*

It is next urged that the act is unconstitutional because it vests judicial powers in the board of trustees of the district, citing *Laisne* v. *State Board of Optometry,* 19 Cal. 2d 831 [123 P.2d 457]. That case is not controlling here as

it had to do with a state board with statewide jurisdiction, while here we have a local board with limited territorial jurisdiction. It is settled in California that local boards of limited territorial jurisdiction not possessing statewide authority may act in a judicial capacity as a quasi judicial body. (*Wulzen* v. *Board of Supervisors,* 101 Cal. 15 [35 P. 353, 40 Am.St.Rep. 17]; *Croly* v. *City of Sacramento,* 119 Cal. 229 [51 P. 323]; *Imperial Water Co.* v. *Board of Supervisors,* 162 Cal. 14 [120 P. 780]; *Rigdon* v. *Common Council,* 30 Cal.App. 107 [157 P. 513]; *Norman* v. *Cogswell,* 82 Cal. App. 159 [255 P. 251]; *Bayside Land Co.* v. *Dolley,* 103 Cal. App. 253 [284 P. 479]; *Nider* v. *Homan,* 32 Cal.App.2d 11 [89 P.2d 136]; *Nider* v. *City Commission,* 36 Cal.App.2d 14 [97 P.2d 293].)

 Plaintiffs point to acts of the Legislature, other than this act, which permit the removal of citrus pests by public authority and at the property owner's expense. They attempt to construe this as permitting double taxation for the same purpose. There is no intimation that any authority other than the district has been organized or is attempting to abate citrus pests in the locality. There is no intimation in the act that its provisions are intended to be exclusive. Because two remedies to abate the same evil or afford the same remedy are enacted by the Legislature has not been found a sufficient reason to hold either unconstitutional. Familiar examples of this are the various street improvement acts under which streets may be improved.

 We will next approach the argument that the act is not a proper exercise of the police powers of the state. This argument is thoroughly answered in *Agricultural Prorate Commission* v. *Superior Court, supra,* where it was held that the Agricultural Prorate Act, which provided for the regulation of the shipment of lemons grown in California by limiting the quantity to be shipped into the primary channels of trade, was a valid exercise of the police powers as it tended to promote the general welfare by permitting the lemon growers composing a large group of citizens to receive a fair return for their produce.

The citrus products of the state include lemons, oranges and grapefruit. It is common knowledge that the acreage devoted to the culture of oranges in this state greatly

exceeds that of lemons. The same is true of the quantity of production and number of growers. Production of grapefruit is considerable. If the prosperity of growers of lemons and promotion of their welfare is a fit subject for legislation under the police powers, certainly the welfare of all citrus growers, of which the lemon growers comprise a minority fraction, must also be held to be a proper subject for legislation under those powers.

This question presents itself: Does the control of citrus pests promote the general welfare by increasing the prosperity of the very considerable group of citizens engaged in citrus culture? We must again take judicial notice of the condition of this industry as the record is silent on this question, though perhaps this fact alone might be sufficient answer as the courts will not declare an act unconstitutional without supporting fact or reason.

Citrus pests are numerous. If not controlled they propagate rapidly and can ruin a grove of citrus trees and destroy its productivity. Thousands of persons are engaged in the citrus industry and are dependent upon it for their livelihood. The groves cover many thousands of acres and annual returns run into many millions of dollars. Besides the very considerable investment of those directly engaged in raising the fruit there is a very considerable investment in facilities for picking, hauling, packing and preparing it for market which requires the services of many people. The transportation of millions of boxes of citrus fruits provides employment for many more. These facts, and many others that might be mentioned, demonstrate that the general welfare is promoted by protecting an industry that provides a livelihood for so many of our people. In *Agricultural Prorate Commission* v. *Superior Court, supra,* the court quoted the following from *People* v. *Nebbia,* 262 N.Y. 259 [186 N.E. 694]:

''But we must not fail to consider that the police power is the least limitable of the powers of government and that it extends to all the great public needs; that constitutional law is a progressive science; that statutes aiming to establish a standard of social justice, to conform the law to the accepted standards of the community, to stimulate the production of a vital food product by fixing living standards of prices for the producer, are to be interpreted with that degree of liberality which is essential to the attainment of the end in view

(*Austin* v. *City of New York, supra* [258 N.Y.] p. 117 [179 N.E. 313]); and that mere novelty is no objection to legislation. (*People* v. *LaFetra,* 230 N.Y. 429 [130 N.E. 601, 16 A.L.R. 152].) The State courts should uphold State regulation whenever possible. They should be clearly convinced that a statute is unconstitutional before they declare it invalid. [Citing cases.]'' See, also, *Nebbia* v. *People of the State of New York,* 291 U.S. 502 [54 S.Ct. 505, 78 L.Ed. 940]; *Chicago, B. & Q. Ry. Co.* v. *Illinois,* 200 U.S. 561 [26 S.Ct. 341, 50 L.Ed. 596]; *Odd Fellows Cemetery Assn.* v. *San Francisco,* 140 Cal. 226 [73 P. 987]; *Laguna Drainage Dist.* v. *Chas. Martin Co.,* 144 Cal. 209 [77 P. 933]; *Jardine* v. *City of Pasadena,* 199 Cal. 64 [248 P. 225, 48 A.L.R. 509]; *People* v. *Associated Oil Co.,* 211 Cal. 93 [294 P. 717]; *Spinks* v. *City of Los Angeles,* 220 Cal. 366 [31 P.2d 193].

 It is urged that as there is no express limitation on the amount of money the district may expend, nor upon the amount of indebtedness it may incur the assessments may become confiscatory and deprive plaintiffs of their properties. There is no suggestion that large debts have been contracted nor that confiscatory assessments have been levied. In fact the assessments levied for a fiscal year are slightly over $5.00 an acre which, when compared with the usual cost of pest control, is very moderate. The amount of an annual assessment is largely determined by the amount of the budget which can be adopted only after notice to the property owners who are given the right to protest and have a hearing. Thus they are given a measure of control over the expenditures by having a voice in fixing the amount available for those purposes. Should the board of trustees ever become so unreasonable and arbitrary as to overrule valid protests and levy assessments that are unjust, discriminatory and confiscatory, plaintiffs may not find the law and the courts so impotent as to be unable to afford relief.

Other questions are argued that are largely subsidiary to those already discussed. We have considered them and believe they have been sufficiently disposed of.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied February 15, 1944, and appellants' petition for a hearing by the Supreme Court was denied March 16, 1944.