[Civ. No. 20025.   First Dist., Div. One.   Aug. 29, 1962.]

ALEXANDER THAIN, Plaintiff and Appellant, v. CITY OF PALO ALTO et al., Defendants and Respondents.

Alexander Thain, in pro. per., for Plaintiff and Appellant.

Robert E. Michalski, City Attorney, and Stanley R. Norton, Assistant City Attorney, for Defendants and Respondents.

SULLIVAN, J.—In this action involving a weed abatement ordinance of the City of Palo Alto, hereafter referred to as City, the plaintiff, a property owner, appeals from a judgment in favor of the above municipality, its assessor and its superintendent of public works. Although represented by counsel below, plaintiff and appellant appears here in propria persona.

Ordinance No. 1313, which is the center of the present controversy, was adopted by the Council of the City of Palo Alto on November 27, 1950, its introductory language reciting that "an emergency exists for the passage of this ordinance; . . ." We first set forth its terms in substance: Section 32.01 provides that no owner or other specified person occupying or having charge of any building, lot or premises shall permit weeds to remain on such premises or public sidewalks or streets, or alleys between said premises and the center line of any public street or alley. "Weeds" means "all weeds growing upon streets, alleys, sidewalks, or private property" including weeds which bear or may bear seeds of a downy or wingy nature, weeds and grasses which may attain such large growth as to become, when dry, a fire menace, weeds otherwise noxious or dangerous, poison oak and poison ivy in a condition of growth constituting a menace to public health, and accumulations of refuse, cuttings and other combustible trash. The section requires that every property owner remove or destroy such weeds.

Section 32.02 provides that whenever any such weeds are growing upon such properties and streets, the council shall pass a resolution declaring them to be a public nuisance and order the City's superintendent of public works to give notice of the passage of the resolution, in substantially the form prescribed by the ordinance, stating that unless such nuisance

be abated without delay, the work of abating will be done by city authorities and the expense thereof assessed against the property on or in front or rear of which such weeds shall have been destroyed or removed. "Such resolution shall fix the time and place for hearing any objections to the proposed destruction or removal of such weeds." The prescribed form of notice, found in section 32.03, *inter alia,* gives notice "that property owners shall without delay remove all such weeds" and that all owners having objection to the proposed destruction or removal in lieu thereof by city authorities are notified to attend a meeting of the City's Council at the City Hall at a specified time. Such notice must be published at least twice in a newspaper published and circulated in defendant City, the first publication to be at least 10 days before the noticed meeting. At the above-mentioned hearing, the City Council under the mandate of section 32.04 must hear and consider any and all objections to the proposed destruction or removal of such weeds and allow or overrule the same "after which the council shall thereupon be deemed to have acquired jurisdiction" to proceed with such destruction or removal. Under section 32.05, the City Council shall order the superintendent of public works to effectuate the abatement by authorized agents or representatives. However, such section further stipulates that any property owner shall have the right to destroy or remove the weeds himself, provided it is done before the arrival of the superintendent or his representative.

The superintendent of public works must, under section 32.06, keep an account of the cost of the above abatement work which is incorporated in the report and assessment list prepared by him for the City Council and filed with the clerk thereof. Such report identifies each parcel of land affected and separately states the expense proposed to be assessed against it. A copy of such report and assessment is posted at the City Hall, together with a notice of the time and place of the hearing and confirmation thereof, said notice in a form prescribed by the statute being also published twice in a newspaper of general circulation in the City. (§ 32.07.) At the hearing, the City Council must hear the report and any objections of property owners liable to be assessed pursuant thereto, make any necessary modifications and confirm the report and assessment list by resolution. (§ 32.08.) Thereafter, the cost of abatement work for each lot "shall constitute special assessments against such respective lots . . . and . . . a lien on such property for the amount of such assessments,

until paid." Under section 32.09, the above assessments are entered on the tax roll upon which municipal taxes are to be collected, included on the same tax bills and collected at the same time and in the same manner.

The present action arises from proceedings taken pursuant to the above ordinance during the fiscal year July 1, 1958, to June 30, 1959, resulting in a special assessment against appellant's property in the following fiscal year 1959-1960. On October 13, 1958, the City Council, pursuant to section 32.02 of the ordinance, passed Resolution No. 3037, entitled "Resolution Declaring Weeds to be a Nuisance."[1] "Notice to Destroy Weeds," as required by the above sections 32.02 and 32.03, and providing for a hearing of any objections by property owners at a meeting of the City Council to be held on November 10, 1958, was published by the superintendent of public works.[2] On November 10, 1958, the council passed, pursuant to section 32.04, its Resolution No. 3041, entitled "Resolution Ordering Weed Nuisance Abated." Work of abatement was carried out by John C. Throckmorton, Jr., doing business as Nu-Lawn Chemical Company, under a contract with City, approved by its council. Upon completion of abatement work, the superintendent of works filed his report and assessment, and the respondent City published in July 1959, a "Notice of Hearing on Report and Assessment for Weed Abatement" pursuant to section 32.07, fixing August 10, 1959, as the date for considera-

---

[1]Resolution No. 3037 also states in part: ". . . that said weeds do now constitute and will continue to constitute a public nuisance, and it is ordered that the said public nuisance be abated in the manner provided by Article 32A of Codified Ordinance No. 5 of the City of Palo Alto and that said nuisance exists upon all of the streets, alleys, sidewalks and private property within said City, as shown, described and delineated on the several maps of the properties in said City which are recorded in the office of the County Recorder of the County of Santa Clara, reference in each instance for the description of any particular street, alley or private property being hereby made to the several maps aforesaid, and, in the event of there being several subdivision maps on which the same lots are shown, reference is hereby made to the latest subdivision map."

[2]Said notice notifies that "the City Council of said City passed a resolution declaring that all weeds growing upon any private property or in any public street or alley, as defined in Section 32.01 of Codified Ordinance No. Five, constitute a public nuisance, which nuisance must be abated by the destruction or removal thereof . . . [and that] property owners shall, without delay, remove all such weeds from their property . . . or such weeds will be destroyed or removed and such nuisance abated by the City authorities, in which case the cost of such destruction or removal will be assessed upon the lots and lands from which, or from the front or rear of which, such weeds shall have been destroyed or removed; . . ."

tion and confirmation thereof by the City Council and for the hearing of any objections thereto. On August 10, the council passed its Resolution No. 3124, confirming the report and assessment.

Appellant thereafter received from respondent City a tax statement for the fiscal year July 1, 1959, to June 30, 1960, which separately stated, in addition to his general municipal taxes, an assessment of $64.48 for ''weed abatement.'' This amount he paid under protest. On April 28, 1960, he commenced the instant action.

Appellant's first amended complaint is in three counts. His first cause of action, seeking declaratory relief, alleges that ''[a]n actual controversy exists between the plaintiff and the defendants as to the validity, operation and effect of the said Ordinance No. 1313. . . .'' Upon such threefold division, appellant by particular allegations, constructs three claims of unconstitutionality: (1) That the ordinance is unconstitutional, presumably on its face, in that it does not define the conditions under which the weeds became a nuisance and is so vague and indefinite as to be unintelligible, failing to set definite standards for the guidance of property owners; that it is also vague and indefinite by failing to prescribe standards for the abatement work and constitutes a deprivation of property rights by failing to provide for damages; that it is unreasonable in requiring property owners to remove weeds from streets and alleys; that it conflicts with the state Constitution by embracing several subjects; that it violates due process by failing to provide for any actual or constructive notice to property owners that a particular piece of property has any alleged nuisance on it; (2) that the ordinance is unconstitutional as applied in that the City engineer contends it is to be applied to unimproved and undeveloped land according to his own definition of the same, hence being unjustly discriminatory; that as a result of the specifications for weed abatement prescribed by City for its contracting representative, the abatement work is unreasonable, being commenced at a time of year when it cannot be determined if the weeds will be a nuisance; that it does not specify the means or method of abating the nuisance; that it does not provide for any notice that there is a nuisance on a particular identifiable parcel of property; that the cost of $64.48 charged to appellant was excessive, unreasonable, and discriminatory; and that appellant had no remedy against defendants for wrongful and negligent acts committed by them in abating alleged nuisances;

and (3) that the effect of the ordinance is unclear since it cannot be determined whether it is classified as a penalty or fine or as a public improvement assessment.

Appellant's second cause of action, seeking a refund of the assessment paid under protest, alleges that appellant's property was not vacant land but had an apricot grove, which was not a public nuisance, and further that, since previous abatement activities in prior years had sterilized the soil for any vegetable growth, no nuisance could have existed in the year here under review.

In his third cause of action, appellant seeks injunctive relief against "further useless and capricious attempts . . . to abate a nuisance which does not exist, . . ." using methods injurious to person and property.

Defendants' answer, in addition to denying the allegations constituting the gravamen of the complaint, pleads two affirmative defenses: First, that no proper claim was filed with defendants in the form or manner required by law; secondly, that the issues raised were identical to those which were raised or could have been raised by plaintiff in a previous action in 1956 in which a judgment, thereafter becoming final, was rendered adverse to appellant herein.

Appellant testified that the property here involved covered about a half acre and that half of it was under lease for a used car lot. The land was part of an old orchard; the trees had been dying; and about five fruit trees remained. He further testified in respect to the ground vegetation on the property during the fiscal year 1958-1959: That, because the City sprayed the land in the previous year, he "never saw any growth in that spring"; that there was probably a clump of vegetation "here and there along the road"; that, as shown by seven photographs taken by him in March 1959 and admitted in evidence, the height of some of the vegetation was "a couple or three inches" although "[i]t seems to be trampled down"; that on that part of the land not occupied by the used car lot, the photographs showed "a clump here and there," the main vegetation being on the portion of the land with the fruit trees; that, as shown by five of the photographs taken by him in July 1958, he noticed very little difference in the condition of the ground vegetation between the two dates; that all in all he noticed very little difference throughout the entire fiscal year, the weeds never reaching any substantial height and the tallest being only 6 inches; that during said year the condition of the vegetation did not constitute a

fire hazard or, as he believed, have weeds bearing seeds of a downy or wingy nature. Appellant did not cut or destroy any weeds on his property because "there was none there to destroy or cut." Nor did he observe any abatement activities by City's representatives on his property. The foregoing testimony was generally corroborated by other witnesses produced by appellant.

Throckmorton, the City's weed abatement contractor, testified that he sprayed appellant's property in February 1959, that the spray was not toxic or harmful to persons or animals and did not cause the soil to become sterile and that he followed the procedure of spraying shortly after the first substantial growth starts and of spraying three to four times a year. He further testified that in February 1959 he found small growth weeds on the property "from the germinating stage up to approximately three to four inches"; that there were weeds which bore or might bear seeds of a wingy and downy nature and weeds and indigenous grasses which might attain such a large growth as to become a fire hazard; that the purpose of the spraying was to kill the weeds before they became full grown "weeds that are germinating and coming up—under four inches. I have to keep them under four to six inches in height"; that he sprayed the entire vacant portion of appellant's property three times during the year.

Appellant appeared before the City Council at the meeting of the City Council held on November 10, 1958, as we have pointed out above, for the purpose of hearing objections of property owners to the proposed abatement of weeds. An excerpt from the minutes, received in evidence, states in part that "Mr. Alexander Thain spoke in protest to the weed abatement procedure." At the trial of the instant case, appellant testified that he read the published "Notice To Destroy Weeds," which gave notice of the meeting, attended the meeting, and made a general protest because his property had been sprayed in previous years and felt his property might be designated for abatement again; that he could not determine whether his property was then in violation of the ordinance and did not thereafter observe any conditions from which he believed he was in violation; and that the next notice of any type received by him from the City was a bill in July 1959 for the expense of weed abatement on the property, which later appeared upon his City tax bill.

Appellant again appeared before the City Council at the meeting held on August 10, 1959, for the purpose of confirm-

ing the report and assessment list and hearing any objections thereto. An excerpt from the minutes, received in evidence, states in part that "Mr. Alexander Thain, 4146 El Camino Real, spoke in protest to the weed abatement procedure and the assessment against his property." He testified at the trial that he read the published notice of such hearing and protested the amount of his assessment of which he had theretofore been advised. Although he did not recall at the trial what he said in protesting at the two meetings of the City Council, he admitted that he probably protested the ordinance upon the grounds that it was unconstitutional, arbitrary and discriminatory and the assessment proposed against his property was exorbitant.

Pursuant to written stipulation of the parties, the court below received in evidence the entire file and records in the previous case of *Thain* v. *City of Palo Alto et al.,* Santa Clara Superior Court No. 97334. Said action, commenced February 1, 1956, was one for declaratory relief, involving the same ordinance and real property, and brought against the same defendants as in the instant case, except the City assessor. The complaint in action No. 97334, in language remarkably similar to the complaint in the case before us, alleged that "an actual controversy exists between the plaintiff and the defendants as to the validity, operation and effect of the said Ordinance No. 1313" in that the City failed to give notice as required by the state statutes dealing with weed abatement (Gov. Code, §§ 39560-39587) and in that the City and its representatives contended that said ordinance "is a valid enactment," notice given pursuant thereto being sufficient. In action No. 97334, the court, after a trial, rendered judgment "[t]hat Ordinance No. 1313 of the City of Palo Alto, adopted November 27, 1950, is a valid ordinance," that proceedings may be properly taken thereunder instead of under the Government Code, and that "said ordinance is valid as against all contentions of plaintiff at issue in this suit."

In the case before us, the trial court found and concluded that the judgment in the superior court action No. 97334 was a bar to the instant case and "is res judicata not only as to the issued [*sic*] raised therein but also as to every issue that might have been raised therein"; that the ordinance in question was valid and constitutional; that a public nuisance within the provisions of the ordinance existed on appellant's property during the fiscal year 1958-1959 and was properly and legally abated; that in levying the assessment against

appellant's property, the City did not act arbitrarily, capriciously or fraudulently; that appellant did not comply with applicable laws requiring filing of a written formal claim for refund; that appellant was not entitled to a refund of the assessment or to injunctive relief; and rendered judgment accordingly denying appellant any recovery or relief prayed for.[3]

Appellant's contentions on appeal must be extracted, not without considerable difficulty, from a welter of vague and confused statements in his briefs. We believe they may be fairly summarized as follows: (1) That the ordinance is invalid and unconstitutional on its face; (2) that it was applied against appellant in a discriminatory, arbitrary and fraudulent manner; (3) that the court erred in holding that the former judgment against appellant in action No. 97334 was a bar to the instant action; (4) that the court erred in denying to appellant a refund of his assessment; and (5) that the court erred in denying injunctive relief.

Respondents, on the other hand, vigorously maintain that, as the court below decided in the instant action, the judgment in the prior action between these parties (No. 97334) is a bar to the instant action at least insofar as the validity and constitutionality of the ordinance are concerned. Relying heavily upon *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807 [122 P.2d 892], respondents argue that the prior judgment is "res judicata" not only as to the issues raised but as to every issue which might have been raised in the prior action. In substance this was the holding of the trial court. It is clear that the parties are the same in both actions (except that the City Assessor is an added defendant in the case before us) and that both actions involve the same parcel of property and the same City ordinance. It is also clear that a final judgment on the merits was rendered in the prior action adjudicating the validity of the ordinance "as against all contentions of plaintiff at issue" in such prior action. However the instant action involves abatement proceedings and an assessment against the property for a different fiscal year than the prior action and, although between the same parties, is

---

[3]In his memorandum of decision, the trial judge stated in part: "This court is bound by the judgment in the former action #97334 that Ordinance #1313 is a valid and constitutional ordinance.

"The court further finds that plaintiff is not entitled to have the assessment set aside, it not being established that the City Council acted arbitrarily, capriciously, or fraudulently in levying the assessment."

obviously on a different cause of action. More accurately, therefore, respondents' argument is based upon an assertion of the defense of collateral estoppel and the pertinent inquiry is whether the judgment in the prior action operates as a conclusive adjudication on issues in the instant action which were actually litigated and determined in the first. (*Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880-881 [299 P.2d 865].) As we have pointed out, appellant's complaint in the prior action raised not only the issue of whether notice should have been given pursuant to the State Weed Abatement Act but also whether the City's contentions that the ordinance was valid and that the only notice required to be given was that prescribed by the ordinance, should be given approval. We are convinced therefore that the validity of the ordinance and the validity of its notice provisions were issues which were actually litigated and determined in the prior action.

However the question of the validity and constitutionality of the ordinance, on its face, including its notice provisions, is one of law. Section 70 of the Restatement of Judgments reads as follows: "Where *a question of law* essential to the judgment is actually litigated and determined by a valid and final personal judgment, the determination is not conclusive between the parties in a subsequent action on a different cause of action, except where both causes of action arose out of the same subject matter or transaction; *and in any event it is not conclusive if injustice would result.*" (Emphasis added.) Comment f to said section states: "The determination of a question of law by a judgment in an action is not conclusive between the parties in a subsequent action on a different cause of action, even though both causes of action arose out of the same subject matter or transaction, *if it would be unjust to one of the parties or to third persons to apply one rule of law in subsequent actions between the same parties and to apply a different rule of law between other persons.*" (Emphasis added.) The foregoing rules have been recognized by the Supreme Court as setting forth "an important qualification of the doctrine of collateral estoppel." (*Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749, 757 [22 Cal.Rptr. 14, 371 P.2d 758].)

In our view "injustice would result" to this appellant by raising against him under the doctrine of collateral estoppel the bar of the prior judgment as an adjudication of the validity and constitutionality of the ordinance and its

notice provisions, if the ordinance or its notice provisions were unconstitutional on their face. In such event, appellant would be bound by the ordinance and its notice provisions would be valid and effective against him, even though other property owners might successfully object to the validity of the ordinance and prevent the impact of its procedures upon their property. Therefore, we feel that implicit in our review of this case, is the necessity of considering whether the ordinance is valid and constitutional on its face and whether the provisions for notice contained in it conform to due process of law. We therefore decline to dispose of this appeal upon the contention of collateral estoppel presented to us by respondents not because any of the requisite ingredients of such doctrine may themselves be absent but because of the above rules which, as we have shown, qualify its application. We proceed to consider appellant's contentions.

We first examine appellant's attempt to strike down the ordinance for its inherent unconstitutionality. On this point he urges that the enactment makes no claim to be necessary for public health, education, safety, morals, comfort of society or good order of the people; that its tenuous claim relates to a possible fire hazard; that it is so vague and indefinite in its provisions as to make compliance impossible; and that it constitutes a deprivation of property without due process of law. All of these arguments must fail.

■■■ Where it is urged that a municipal ordinance does not constitute a proper exercise of the police power, the inquiry of the court is limited to determining (1) whether the object of the ordinance is one for which the police power may be properly invoked and, if so, (2) whether the ordinance bears a reasonable and substantial relation to the object sought to be attained. (*Lynch Meats of Oakland, Inc.* v. *City of Oakland* (1961) 196 Cal.App.2d 104, 107 [16 Cal.Rptr. 302]; cf. *Allied Properties* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 141, 146 [346 P.2d 737].) ■■■ Ordinances are presumed to be valid, and no provision of the challenged ordinance may be condemned as an improper exercise of the police power if any rational ground exists for its enactment. (*In re Petersen* (1958) 51 Cal.2d 177, 182 [331 P.2d 24], appeal dismissed (1959) 360 U.S. 314 [79 S.Ct. 1294, 3 L.Ed.2d 1259].) ■■■ As stated in *Justesen's Food Stores, Inc.* v. *City of Tulare* (1941) 43 Cal.App.2d 616, 620-621 [111 P.2d 424] : ''The principles governing courts in determining the validity of legislative enactments under the due process of

law clause are clearly defined. A legislative body, in the exercise of its police power, has a broad discretion to determine both what public interests are and the measures necessary for the protection of such interests. The determination of the need for a mode of exercising the power is primarily for the legislative body and the courts will not hold enactments invalid unless they are palpably unreasonable, arbitrary or capricious, having no tendency to promote the public welfare, safety, morals, or general welfare. Every presumption is in favor of the reasonableness of the law and its validity. ▮ A court is not concerned with the wisdom or policy of the law and cannot substitute its judgment for that of the legislative body. If reasonable minds might differ as to the reasonableness of the regulation, the law must be upheld. [Citations.]''

▮ It is clear that the object of the ordinance before us is the promotion of the health, safety and welfare of the inhabitants of the defendant City and as such falls within the compass of municipal police powers. It is common knowledge that weeds in instances are or may become a public nuisance. ▮ It is also well settled that in the exercise of its police powers, a municipality may enact ordinances the object of which is to abate or prevent nuisances. (Cal. Const., art. XI, § 11; *Odd Fellows' Cemetery Assn.* v. *City & County of San Francisco* (1903) 140 Cal. 226, 231-232 [73 P. 987]; *In re Mathews* (1923) 191 Cal. 35, 38 [214 P. 981]; *Sullivan* v. *City of Los Angeles* (1953) 116 Cal.App.2d 807, 810 [254 P.2d 590]; see generally 35 Cal.Jur.2d, Municipal Corporations, § 237, p. 60; cf. State Weed Abatement Act, not applicable to respondent City, a charter city: Gov. Code, §§ 39501, 39502; 39560-39587.) ▮ The object of the ordinance, therefore, is one for which the municipal police power may be properly invoked.

▮ As we have set forth in detail, the general plan of the ordinance is to require the property owner to remove or destroy the proscribed weeds and in the event of his failure to do so, to have the same abated as a public nuisance by the City authorities and to charge the expense of such abatement against the affected property. It is not our province to weigh the necessity, desirability or wisdom of such provisions; these considerations are legislative matters. (*Allied Properties* v. *Department of Alcoholic Beverage Control, supra,* 53 Cal.2d 141, 146; *Lynch Meats of Oakland, Inc.* v. *City of Oakland, supra,* 196 Cal.App.2d 104, 107.) It is enough that we determine that such provisions of the ordinance bear a reasonable

and substantial relation to its object. It is clear to us that they do.

Appellant contends that the ordinance is "so vague, uncertain, and indefinite in its terms and provisions that it is impossible for reasonably prudent and intelligent citizens to comply with its terms." His briefs, however, fail to point out in what respect and in reference to which provisions, the ordinance offends against definiteness and certainty. Appellant's initial attack on this point in his first amended complaint charged that the ordinance set no standards and failed to specify abatement methods. ▮▮▮▮ It is well settled that an ordinance, to be valid and effectual, must set forth some norm or standard by which all persons may know their rights and obligations thereunder (*Agnew* v. *City of Culver City* (1956) 147 Cal.App.2d 144, 153 [304 P.2d 788]) and that "[i]n order to meet the constitutional test of due process, an ordinance, like any other statute, may not forbid or require the doing of an act 'in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' [Citations.]" (*Peterson* v. *Safeway Stores, Inc.* (1960) 185 Cal.App.2d 24, 27 [7 Cal.Rptr. 924].) We feel that such requirements of certainty and definiteness are met in the instant case. The words "weeds," "indigenous grasses," "poison oak," "poison ivy," "refuse" and "trash" are all words of common meaning which are easily understood by the average citizen. The definition of "weeds" in section 32.01 can be undertsood with reasonable certainty.[4] The ordinance also makes it clear that the proscribed weeds, if not removed by the property owner, are, under section 32.02, to be ordered abated by destruction or removal. There is nothing vague about these provisions. ▮▮▮▮ In order to make an ordinance sufficiently certain to satisfy constitutional requirements, it is not necessary that it furnish detailed plans and specifications. (*Lorenson* v. *Superior Court* (1950) 35 Cal.2d 49, 60 [216 P.2d 859].)

Appellant makes the additional claim that the ordinance is obnoxious to due process because of its notice provisions. The essence of this argument is that the two published notices provided for by the ordinance and given in the instant case— the Notice to Destroy Weeds pursuant to section 32.02 and the

---

[4] It is to be noted that the State Weed Abatement Act states that "'[w]eeds' means weeds which when mature bear wingy or downy seeds, which will attain such a large growth as to become a fire menace when dry, or which are otherwise noxious or dangerous." (Gov. Code, § 39560, subd. (b).)

Notice of Hearing on Report and Assessment for Weed Abatement pursuant to section 32.07—are not "true" notices since they contain no reference either to specific properties or specific property owners. According to this claim, the property owner does not receive any notice, either actual or constructive, that his property is in violation prior to the time the City and its representatives enter thereon to abate the alleged nuisance.

Appellant's briefs, which consist largely of an array of disconnected excerpts from the headnotes, as well as the text of cases, fail to disclose any authorities cited in support of the above-mentioned propositions. ▇ It is of course long and well recognized that as a general rule municipalities have the power to provide for the summary abatement of nuisances by municipal officials, particularly where an emergency exists. (See generally 62 C.J.S., Municipal Corporations, § 281, subd. (c)(4), pp. 632-633; 6 McQuillin, Municipal Corporations (3d ed.) § 24.71, pp. 591-594.) As the latter authority points out, the theory of the rule permitting summary abatement is that "the requirement of preliminary formal legal proceedings and a judicial trial would result in defeating the beneficial objects sought to be obtained." (6 McQuillin, Municipal Corporations (3d ed.) p. 592.) ▇ Equally well recognized is the power of the municipality in such instances to charge the cost of abatement to the property owner and to assess or make such cost a lien against the property involved. (See generally 62 C.J.S., Municipal Corporations, § 281, subd. (d), pp. 635-636; 6 McQuillin, Municipal Corporations (3d ed) § 24.79, pp. 604-606.)

▇ Such special or summary proceedings for abatement are valid where they afford the essential elements of due process of law, namely notice and an opportunity to be heard. ▇ The rules balancing the valid exercise of the police power with the protection of the owner's right in his property, are well summarized in 39 American Jurisprudence, Nuisances, section 187, pages 462-463: "While, if possible, the owner of property should, before its destruction, be given a hearing upon the question whether his property is in fact a menace to the community, the legislature may, when necessary, authorize the seizure and destruction of property which is a nuisance without previous notice to the owner and an opportunity for a hearing. Things which are by the common or statutory law declared to be nuisances per se, or which are by their very nature palpably and indisputably such, may

be abated or destroyed without notice or hearing.       And where a statute so specifically defines what shall constitute a nuisance as to leave no room for latitude on the question, officials are authorized and protected in abating such described nuisances, and no notice or hearing is essential. . . .

"It has been held that as against the person actually creating the nuisance, it may be abated without notice; also, in cases where immediate action is essential, notice is not necessary. And in cases of public emergency or threatening public calamity, property may be destroyed without notice or a judicial hearing to abate or prevent the impending injury. It has been held, however, that power given a municipality to abate nuisances in a summary manner does not mean that they may be abated without notice or hearing, but simply that it may be done without a trial in the ordinary forms prescribed by law for a regular judicial procedure, and that except as to those things which are by the common or statute law declared to be nuisances per se, or which are in their very nature palpably and indisputably such, neither the municipal authorities of any city nor any department thereof which has been given the power to abate nuisances has the legal right summarily to compel the abatement of a particular thing or act as a nuisance without reasonable notice to the person alleged to be maintaining or doing the same, of the time and place for hearing and determining whether such thing or act does in law constitute a nuisance." (See also 16A C.J.S., Constitutional Law, § 612, p. 761; § 645, pp. 913-916.)

We also find helpful and persuasive in the instant matter, authorities dealing with the requirements of due process in respect to the levying of assessments for public or local improvements. While obviously not within the area of nuisances, they present situations analogous to the one before us, since in each case there is involved an assessment against the affected property, in one instance for an improvement benefiting it and in the other for the cost of abating a nuisance and, therefore, in a sense of benefiting the property affected. It is well settled that when special or local assessments have been levied by a municipality for such improvements, procedural due process is satisfied if at *some* stage of the proceedings the owner of the property affected is given notice and the opportunity to be heard on the question of the validity, fairness and amount of the assessment. (*Chicago, M. St. P. & P. R. Co.* v. *Risty* (1928) 276 U.S. 567, 574 [48 S.Ct. 396, 72

L.Ed. 703] ; *Londoner* v. *City & County of Denver* (1908) 210 U.S. 373, 378, 385 [28 S.Ct. 708, 52 L.Ed. 1103] ; *Voigt* v. *City of Detroit* (1902) 184 U.S. 115, 122 [22 S.Ct. 337, 46 L.Ed. 459] ; *Brill* v. *City of Los Angeles* (1930) 209 Cal. 705, 708 [289 P. 850] ; *Miller & Lux, Inc.* v. *Board of Supervisors* (1922) 189 Cal. 254, 261-262 [208 P. 304] ; *Ferry* v. *O'Brien* (1922) 188 Cal. 629, 636-637 [206 P. 449] ; *Brookes* v. *City of Oakland* (1911) 160 Cal. 423, 428-432 [117 P. 433] (dictum) ; *In re Orosi Public Utility Dist.* (1925) 196 Cal. 43, 51 [235 P. 1004] (dictum) ; *Shepherd* v. *Chapin* (1920) 45 Cal.App. 645, 651 [188 P. 571] (dictum) ; cf. *Irvine* v. *Citrus Pest Dist. No. 2* (1944) 61 Cal.App.2d 378, 383 [144 P.2d 857] ; 48 Am. Jur., Special or Local Assessments, § 169, at pp. 706-708 ; 63 C.J.S., Municipal Corporations, § 1400 at p. 1171, § 1401 at pp. 1172-1173, 1177 ; 14 McQuillin, Municipal Corporations (3d ed.) §§ 38.98, 38.99 at pp. 237-244.) The foregoing authorities support the propositions that the requirements of due process are met where notice and an opportunity to be heard are afforded the property owner at some time before the assessment becomes final and that such notice is sufficient even where it is given after the improvement but before the assessment becomes final. (See 48 Am.Jur., Special or Local Assessments, § 169, p. 707 ; 63 C.J.S., Municipal Corporations, § 1401, p. 1177.)

▋ Applying the foregoing principles, we conclude that the notice provisions of City's ordinance satisfy the requirements of due process. While section 32.02 of the ordinance provides for a resolution of the City Council declaring weeds a public nuisance to be passed at a meeting without prior notice thereof to the property owner, the property owners are given notice by publication of such resolution, of the proposed destruction or removal of weeds and of the subsequent public meeting of the City Council at which they will have an opportunity to protest the contemplated abatement. ▋ Appellant urges that such notice is defective because it does not refer to specific properties or specific property owners. We do not agree. As we have already pointed out, the prescribed form of notice informs property owners of the passage of a resolution "declaring that *all* weeds growing upon *any* private property or in *any* public street or alley . . . constitute a public nuisance . . . [and that] property owners shall without delay remove all such weeds. . . ." (Emphasis added.) This obviously puts the property owner on notice that all property with weeds is involved, including his own. We do not see how

anything would be added to the effectiveness of the notice by itemizing each lot and owner.

In addition to the above notice and opportunity to be heard, the property owners are given notice, by publication, of the filing by the superintendent of public works of his report and assessment list and of the time of the public meeting of the City Council thereon at which they will have an opportunity to object to such report and assessments. These provisions affording the property owner notice and an opportunity to be heard before the assessment on his property becomes final, satisfy due process under the authorities we set forth above. Appellant's objection to this second notice upon the ground that it does not refer to specific properties or owners has no merit. It plainly states that a copy of the report and assessment has been posted at the City Hall and in addition provides for the presentation of the original report and assessment at the public meeting. Under section 32.06 "[s]uch report shall refer to each lot or parcel of land by description sufficient to identify such lot or parcel, together with the expense proposed to be assessed against each separate lot or parcel of land." The property owner is nonetheless advised of the exact proposed assessment against his property.

Quite apart from the foregoing considerations, appellant cannot urge that the two notices published in the instant case were not "true" notices or that he, as the property owner involved, did not receive any "true notice, actual or constructive" prior to abatement work on his property, since the record is clear that he personally appeared at each of the public meetings set forth in the notice. (*Hopkins* v. *MacCulloch* (1939) 35 Cal.App.2d 442, 451 [95 P.2d 950].)

We hold therefore that Ordinance No. 1313 is a valid and constitutional ordinance of respondent City.

We turn to appellant's second contention which is that the ordinance was applied against him in a discriminatory, arbitrary and fraudulent manner. Appellant's argument on this point constitutes an attempt to have this court, as he attempted to have the court below, review the action of the City Council in levying the assessment. As we have pointed out, the trial judge stated in his memorandum of decision that this charge was not established and found that "[i]n levying said assessment against plaintiff's property the City Council . . . did not act arbitrarily, capriciously or fraudulently."

In *Takata* v. *City of Los Angeles* (1960) 184 Cal. App.2d 154, 159 [7 Cal.Rptr. 516], it is stated that "[i]n

reviewing the findings and orders of a local, quasi-judicial administrative body, the *trial court* is confined to the evidence received by the respondent Board; and in reviewing that evidence may not reweigh it, but may only consider whether there is any substantial competent and material evidence in the administrative record to sustain the findings and order attacked. [Citations.]

    "The *appellate court*, in reviewing the judgment of a trial court affirming the findings and order of a local, quasi-judicial administrative tribunal, will not reweigh the evidence received by the trial court, but itself is limited to determine whether there is any substantial evidence in the record on appeal to support the trial court's judgment. [Citation.]" The determination of a city council therefore is conclusive and will be sustained in the absence of a showing of fraud or mistake. (*Larsen* v. *City & County of San Francisco* (1920) 182 Cal. 1, 14 [186 P. 757]; *Jenner* v. *City Council of City of Covina* (1958) 164 Cal.App.2d 490, 497 [331 P.2d 176].)

    "The rule in California" according to the last cited case "is that upon review of the decision of a local administrative body, the reviewing court is concerned only with the presence or absence of substantial evidence in the agency record which will support the agency's determination. The reviewing court may not consider evidence which was not presented to the local board; there is to be no trial de novo with respect to matters upon which the agency was authorized to and did in fact decide." (Pp. 499-500.)

Appellant had two opportunities to be heard in connection with this assessment. He appeared at the meeting of the City Council of November 10, 1958, called for hearing objections to the proposed destruction or removal of weeds. The record shows that he "spoke in protest to the weed abatement procedure" but fails to disclose that he presented any evidence. He appeared again at the meeting of the City Council of August 10, 1959, called for hearing objections to the report and assessment list. The record of such meeting discloses that he spoke in protest to the weed abatement procedure and the assessment against his property, but again fails to disclose that he presented any evidence. It is to be assumed that the City Council had before it the facts necessary to support its decision on each occasion. The record does not show any evidence presented by appellant to the council at either meeting which would have materially affected the determination of the City Council and which evidence was arbitrarily rejected by

them. An examination of the record before us shows no arbitrary action or mistake upon the part of the council, much less any fraud.

In view of our conclusion that the ordinance is valid and constitutional, not only on its face but also as applied to appellant, it is not necessary for us to consider appellant's remaining contentions.

The judgment is affirmed.

Bray, P. J., and Devine, J.,* concurred.

A petition for a rehearing was denied September 26, 1962, and appellant's petition for a hearing by the Supreme Court was denied October 24, 1962.

*Assigned by Chairman of Judicial Council.