[Crim. No. 14879.    Second Dist., Div. Two.    Aug. 7, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LEE E. GREENE, Defendant and Appellant.

McGrew Willis for Defendant and Appellant.

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, and Michael T. Sauer, Deputy City Attorney, for Plaintiff and Respondent.

FLEMING, J.—Greene was charged in municipal court with the misdemeanor of failing to correct an existing excavation and fill on his property, in violation of Los Angeles Municipal Code, section 91.0103(n). That ordinance reads:

"Whenever the Department [of Building and Safety] determines by inspection that any land or any existing excavation or fill has, from any cause, become a menace to life or limb, or endangers public or private property, or affects the safety, usability or stability of a public way, the owner or other person in legal control of the property concerned shall, upon receipt of a written notice thereof from the department, correct such condition in accordance with the provisions of Division 30 of this Code and the requirements and conditions set forth in such notice so as to eliminate the condition complained of. . . ."

After a four-day trial and an inspection of the property, a jury found Greene guilty of violating the ordinance. He was placed on probation on condition that he pay a fine of $100 and remedy the condition complained of by the department. Greene appealed to the superior court on the ground that the ordinance was unconstitutional on its face. The appellate department of the superior court so held, and the conviction was reversed. In declaring the ordinance unconstitutional the superior court took the view that the ordinance "would compel a landowner to take affirmative acts to remedy a dangerous condition without offering him an alternative", that such compulsion exceeded the authority conferred by the police power. On the People's application the case was certified to this court. (Cal. Rules of Court, rule 63(a) and (c).)

The ordinance on its face appears to be an exercise of the police power designed to protect the public health and safety. As such, "No valid objection to the constitutionality of a statute under the due process clause properly arises if it is reasonably related to promoting the public

health, safety, comfort and welfare, and if the means adopted to accomplish that promotion are reasonably appropriate to the purpose." (*Higgins* v. *City of Santa Monica,* 62 Cal.2d 24, 30 [41 Cal.Rptr. 9, 396 P.2d 41]; *Thain* v. *City of Palo Alto,* 207 Cal.App.2d 173 [24 Cal.Rptr. 515].) ▇ The question before us is whether the means provided in the ordinance for the safety of life, limb, and property, and for the safety, stability, and usability of the public highways, are reasonably appropriate to the stated objectives of the ordinance.

▇ Greene presents three basic objections to the ordinance:

(a) it may penalize a landowner for a condition not of his own making;

(b) it may require a landowner to comply with a directive of the department without giving him an alternative;

(c) it may subject a landowner to unlimited expense.

Basically, the ordinance is a nuisance ordinance, for it is directed against conditions which present dangers to persons and property, and any condition which, actually or potentially, menaces life or limb or obstructs a public highway amounts to a public nuisance. (*Takata* v. *City of Los Angeles,* 184 Cal.App.2d 154, 165 [7 Cal.Rptr. 516]; *County of San Diego* v. *Carlstrom,* 196 Cal.App.2d 485, 491 [16 Cal.Rptr. 667]; Civ. Code, § 3479.) (Section 91.0103, and other sections regulating building construction and maintenance were treated as nuisance ordinances in *Dunitz* v. *City of Los Angeles,* 170 Cal.App.2d 399 [338 P.2d 1001].) Broadly speaking, the existence of a condition amounting to a nuisance is the critical factor and not the cause of the condition. For example, a municipal government may punish an owner of a building who refuses to comply with its building code even though the building was constructed before the adoption of the code. (*City of Bakersfield* v. *Miller,* 64 Cal.2d 93 [48 Cal.Rptr. 889, 410 P.2d 393].)

The reference in the present ordinance to division 30 of the Municipal Code, which establishes standards for excavating and filling, suggests that the chief intended application of the ordinance is to excavations and fills. The phrase, "from any cause," would appear to make the ordinance applicable to excavations or fills which have become hazardous as a result of natural forces. But even if we assume that the ordinance and the phrase apply to unexcavated or unfilled land, e.g., a hill-

side lot that has become hazardous because of a natural event such as a mild earthquake, the principle remains that it is the existence of the condition rather than its cause which determines the nuisance. It is generally immaterial how the dangerous condition came about or what forces created it. In other words a nuisance is a nuisance regardless of cause.

It is now well-established that a landowner may be compelled to make his property safe. He may be required to fence an excavation, to cover a hole, to cut down trees which endanger the public, to clear brush from his property and thereby reduce the fire hazard. He may even be required to clear weeds and unsightly growth from his property, not only to reduce the fire hazard and to foster public health, but to preserve the attractiveness of the neighborhood and prevent the spread of unwanted growth. (*Thain* v. *City of Palo Alto,* 207 Cal.App.2d 173, 188 ff. [24 Cal.Rptr. 515]. And see annot. 58 A.L.R. 215.) He may be required to change the drainage on his property to accommodate the welfare of his neighbors. (*Keys* v. *Romley,* 64 Cal.2d 396, 410 [50 Cal.Rptr. 273, 412 P.2d 529].) If the day ever existed when a landowner could permit his property to remain in a dangerous condition in defiance of the public authorities, that day has passed. (*Queen side Hills Realty Co.* v. *Saxl,* 328 U.S. 80 [90 L.Ed. 1096, 66 S.Ct. 850]; *Goldblatt* v. *Hempstead,* 369 U.S. 590, 595-596 [8 L.Ed.2d 130, 134-135, 82 S.Ct. 987]; *Irvine* v. *Citrus Pest Dist.,* 62 Cal.App.2d 378 [144 P.2d 857].)

Appellant's second argument in a sense concedes that the public authorities may act on behalf of the public safety but contends that this particular ordinance is unconstitutional because it compels a landowner to take affirmative action to correct a dangerous condition without affording him an alternative remedy. Appellant relies on *Department of Public Works* v. *City of San Diego,* 122 Cal.App. 159 [10 P.2d 102]. In that case a dam considered safe by the authorities when built in 1918, was found to be unsafe in 1929. Under the Dam Act the Department of Public Works sought a writ of mandate to compel the city to strengthen the buttresses of the dam. The court held that the act did not authorize the writ, and declared that if the act did ''permit the department to affirmatively compel the doing of particular work regardless of whether or not the owner of a dam desired to continue to operate and maintain'' the dam, it would be unconstitutional. But we note in the case that neither the power to make the dam safe nor the state's authority to protect the public was

questioned. What the court decided was that the city should have been given the alternative of not using the dam, that it was not the statute but the order issued under it which was unconstitutional. Although the subsequent history of the controversy does not appear in the opinion, the opinion states that the spillways of the dam were inadequate to empty water accumulating behind the dam. Thus even if San Diego stopped using the dam, it would have to alter the spillways in order to prevent an accumulation of water behind an unused dam. The alternative given the dam owner appears to have involved some positive work and some out-of-pocket expense. By no means does the case hold that a dam owner may cease to operate his dam, abandon his work, and do nothing. One way or another he must still abate his nuisance.

Nevertheless, in the present case appellant argues that the ordinance deprived him of the alternative of doing nothing; that he could not remedy the dangerous condition by any amount of inaction; nor could he abandon the land, because a fee simple title cannot be lost by abandonment (1 Cal.Jur. 29) ; since he had no choice but to comply with the directive of the city, the ordinance is unconstitutional.

Appellant's discussion of alternatives ignores the basic distinction between the compulsory reconstruction sought by the state in the *San Diego* case and the present order of the department, which seeks only to eliminate a dangerous condition. The San Diego dam was both useful and defective, and the state sought to preserve its utility and eliminate its defects by compelling reconstruction. A public authority cannot order reconstruction of a structure—but it can order its demolition if demolition is necessary to insure the public safety. Such an order falls within the general police power to abate a nuisance. By a series of physical acts destructive of the nuisance, the land is restored to the physical state it was in before the nuisance came into being. Although affirmative acts to remedy the condition of the land may be required, their ordering is an exercise of the police power which directly promotes an essential task of government, protection of the public from a threat to its health and safety. (*City of Bakersfield* v. *Miller,* 64 Cal.2d 93 [48 Cal.Rptr. 889, 410 P.2d 393].)

Under the present ordinance the public authority has sought correction of a condition which is dangerous to persons, property, and the public highway. Its action does not go.

further and attempt, as in *San Diego*, to compel a landowner to accomplish any positive purpose, such as maintenance of a useful structure. The order does not attempt to make the land useful or beautiful or functional or anything other than safe. We think the ordinance on its face is constitutional. (*City of Bakersfield* v. *Miller*, 64 Cal.2d 93 [48 Cal.Rptr. 889, 410 P.2d 393]; *Consolidated Rock Products Co.* v. *City of Los Angeles*, 57 Cal.2d 515 [20 Cal.Rptr. 638, 370 P.2d 342]; *Southern Pac. Co.* v. *City of Los Angeles*, 242 Cal.App.2d 38 [51 Cal.Rptr. 197]; *County of Colusa* v. *Strain*, 215 Cal.App.2d 472 [30 Cal.Rptr. 415]; *Thain* v. *City of Palo Alto*, 207 Cal.App.2d 173 [24 Cal.Rptr. 515].)

█ Appellant's final objection is that the ordinance might subject a landowner to unlimited expense. Such an objection is not an appropriate one to test the validity of the ordinance itself. In some instances the validity of a particular exercise of the police power may depend on the relationship between the desirability of the goal sought by the governmental body and the expense imposed on the regulated citizen: "the constitutional criteria . . . are whether the expense necessarily incurred in complying with the statute and the sanctions imposed for noncompliance are reasonable in relation to the public health or safety interest being protected." (*City of Bakersfield* v. *Miller*, 64 Cal.2d at p. 102 [48 Cal. Rptr. 889, 410 P.2d 393]. See also, *Pacific Employers Ins. Co.* v. *Industrial Acc. Com.*, 219 Cal.App.2d 634, 644 [33 Cal. Rptr. 442].) █ But the relative merits of the objective sought and the cost of the means to achieve it have not been brought before us. On this point we are dealing with phantoms and spirits conjured from the world of the imagination, for there has been no showing of the value of appellant's property, the dangers it has presented to others, or the cost of making it safe. Undoubtedly, the reasonableness of the cost of making the property safe may have a substantial bearing under the due process clause on the validity of any order issued under the ordinance. (*Goldblatt* v. *Hempstead*, 369 U.S. 590, 594 [8 L.Ed.2d 130, 133, 82 S.Ct. 987].) █ Any valid ordinance may be unconstitutionally applied or misused. (*Yick Wo* v. *Hopkins*, 118 U.S. 356 [30 L.Ed. 220, 6 S.Ct. 1064].) Appellant, however, for reasons best known to himself, has not presented us with any facts but has chosen to stand on the constitutional invalidity of the ordinance on its face. The argument of excessive expense has no relevancy to this appeal.

The judgment of conviction is affirmed.

Roth, P. J., and McCoy, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 3, 1968.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.